**HALL'S AERO SPRAYING, INC.,**
Appellant,

v.

**UNDERWRITERS AT LLOYD'S, LONDON,** Appellee.

No. 17792.

United States Court of Appeals
Fifth Circuit.

Feb. 4, 1960.

Rehearing Denied March 9, 1960.

Howard Barker, John H. McBryde, Fort Worth, Tex., P. H. Hardin, Fort Smith, Ark., for appellant.

L. W. Anderson, William B. Henley, Jr., Dallas, Tex., for appellee, Underwriters at Lloyd's, London. Harris, Anderson, Henley & Rhodes, Dallas, Tex., of counsel.

Before HUTCHESON, JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

Underwriters at Lloyd's, London, herein called Underwriters, brought an action for a declaratory judgment against its assured, Hall's Aero Spraying, Inc., herein referred to as Hall, and a number of landowners who were asserting claims against Hall for crop damage allegedly arising out of crop dusting operations conducted by Hall near Sulphur Bluff, Texas, in May and June of 1958. Hall, an Arkansas corporation, prior to these operations, had secured a policy of aircraft liability insurance written by Underwriters. Under "Exclusions" the policy provided that cover-

age was not provided for liability arising out of the operation of the aircraft for an unlawful purpose. The policy contained a "Crop Dusting Operations Endorsement," in which was a group of clauses under the caption "Warranties" and one of these provided:

"The Assured warrants that:

"1. All regulations of the Civil Aeronautics Authority, the Civil Aeronautics Board and State and Local Authorities applicable to crop dusting, spraying, seeding, fertilization or baiting operations shall be strictly complied with."

Hall failed to comply with Texas Department of Agriculture Regulations pertaining to crop dusting in failing to obtain a permit before undertaking spraying operations, and in failing to obtain prescribed equipment licenses. In the district court Underwriters sought a declaration that it was not obligated to defend the crop damage claims, discharge any liability or pay any judgments rendered against Hall as a result of such claims. In support of its position, Underwriters relied on two grounds; first, the admitted breach by Hall of the terms of paragraph 1 of the so-called warranties in the crop dusting endorsement, and second, the claim that conducting spraying operations without a permit and equipment license from the state was the operation of the aircraft for an "unlawful purpose" and as such excluded from the coverage of the policy. Both parties moved for a directed verdict. Underwriters rested upon the construction of the policy terms. Hall asserted that the provisions which had been breached were not warranties, even though called such in the policy, and therefore, since it had not been shown that the breach contributed to the loss, he was entitled to judgment. The district court rejected Underwriters' claim that the aircraft was being used for an "unlawful purpose" within the policy exclusions. The court assumed however, that the so-called warranties were promissory warranties and, citing 24B Tex. Jur. 429–430, Insurance § 196, stated it

to be "the settled law in Texas that a promissory warranty contained in a policy of insurance (other than fire insurance) must be literally complied with and that the failure to literally comply with a promissory warrant will render the policy ineffective or unenforceable, and this is true," said the district court, "regardless of whether or not the failure to comply with the warranty prejudiced the Insurance Company." Judgment was entered for Underwriters and Hall, on appeal, asserts that the district court incorrectly construed the so-called warranties clause. Underwriters defends the court's decision and says that even though the ground for the decision be erroneous, the judgment must nevertheless be affirmed because of the "unlawful purpose" provision of the policy.

■■ Hall contends, inter alia, that in holding that the clause relating to compliance with state and other regulations applicable to spraying operations is promissory warranty, the district court erred. With this contention we agree. It is the general rule that,

"The use of the ward 'warranty' does not necessarily render a statement made in an application or policy a warranty. * * * Also, although all of the statements in the application are called warranties if the policy contains an express condition for forfeiture in case certain designated statements were untrue, the other statements will be construed as having the legal effect of representations only. Where the policy contains several representations and it is specifically provided as to certain of such representations that the contract shall be avoided if they are not complied with, the representations as to which such provision is not made will not be construed as warranties." 45 C.J.S. Insurance § 473(4) (b), p. 163.

The law does not prevent parties from providing by contract that the validity of an insurance policy depends upon the strict compliance with a policy provision. "But, unless clearly demanded by the

established rules governing the construction of written agreements, such an interpretation ought to be avoided." Moulor v. American Life Insurance Co., 111 U.S. 335, 4 S.Ct. 466, 469, 28 L.Ed. 447.

The Texas authorities reflect the general rule. The Supreme Court of Texas has said,

> "The use of the word 'warranty,' in the clause relied upon, is not to be taken as necessarily creating a warranty in law. M'Clain v. Provident S. L. A. Soc. [3 Cir.], 110 F. 85, 49 C.C.A. 31.

> "In [Phoenix Assur.] Company [of London] v. Munger, 92 Tex. 297, 49 S.W. 222, Judge Denman defines warranty in insurance policies in the following clear and explicit language: 'A warranty in an insurance contract is a statement made therein by the assured which is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true.'" Reppond v. National Life Insurance Co., 100 Tex. 519, 101 S. W. 786, 788, 11 L.R.A.,N.S., 981.

The rule was also applied by the Supreme Court of Texas in its decision in Phoenix Assur. Co. of London v. Munger Improved Cotton-Mach. Mfg. Co., 92 Tex. 297, 49 S.W. 222, where the assured "warranted," among other things that he would not run his gin at night, and would have specified amounts of water always available. In holding the clause in question not to be a warranty, in a technical sense, breach of which would result in forfeiture, the court stated,

> "A further evidence that they did not so intend to contract is found in the fact that they, immediately after said clause, proceeded to state various contingencies upon which the policy should be void. If they intended, by the use of the former language, to provide that the policy should be of no effect in case any of the statements there made were untrue, even as to immaterial matters,

> then they would most probably have used similar language with reference to the latter statements or rather, would not have separated them from the first." 49 S.W. 222, 225.

In the policy before us, immediately preceding the clause designated "warranties," is a clause headed, "Exclusions," which reads, "The Underwriters shall not be liable for claims under this endorsement in respect of:" followed by eleven specific instances where Underwriters' liability would not attach. There is another set of exclusions in the insuring clause of the policy. There is also a clause in the insuring clause which provides: "This entire certificate shall be void (6) If the Assured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or (7) In the case of fraud. * * *" Since the forfeiture provisions are absent from the clause relied on by Underwriters, but appear elsewhere in the policy and endorsement, the clause will not be interpreted as a warranty. Phoenix Assur. Co. v. Munger Imp. Cotton-Mach. Mfg. Co., supra.

Underwriters seeks to distinguish the Munger case on the ground that it involved a fire insurance policy, the rule as to which, it is claimed, is different from the rule to be applied to liability policies. As authority for this proposition Underwriters cites Home Ins. Co. of New York v. Springer, Tex.Civ.App., 131 S.W.2d 412. In that case, the assured under an automobile liability policy, Springer, sought to avoid forfeiture of coverage under a clause providing that, with specified exceptions, the "Company shall not be liable for loss or damage to any property insured hereunder while subject to any lien. * * *." 131 S.W.2d 412, 413. Springer had refinanced his car after the policy was written and, under the literal terms of the clause, had lost his insurance. In answer to Springer's attempt to invoke the Munger rule, the court distinguished the two cases and then went on to discuss

what is now Section 6.14 of the Texas Insurance Code, V.A.T.S.

"The Legislature, in 1913, perhaps prompted by holdings of the Supreme Court in the Munger case, passed what is now Article 4930, Vernon's Ann.Civ.St., which reads: 'No breach or violation of the insured of any of the warranties, conditions or provisions of any fire insurance company, contract of insurance or application therefor, upon personal property, shall render void the policy or contract, or constitute a defense to a suit for loss thereon, unless such breach or violation contributed to bring about the destruction of property.' This provision by its very terms, as well as by the construction given by our courts, is applicable only to fire insurance policies. It is another one of our statutory inhibitions of technical defenses provided by law, against losses by fire. The Legislature up to now has not seen fit to pass similar Acts regulating collision or theft insurance. Until this is done we are powerless to read it into the law." 131 S.W.2d 412, 415.

From this Underwriters would have us draw the conclusion that the principles announced in the Munger case were, in their entirety incorporated into the statute quoted. But such is not the case. A comparison of the decision in Munger and the statute will show that rule of construction announced and applied in Munger, which we here follow, is not the rule enacted by the legislature. Nor was the Munger doctrine considered by the court which decided Springer. Indeed it would be inapplicable to the clause in Springer's contract since that clause contained precise words of forfeiture for want of which the clause in Munger was held not to be a warranty. In this regard see also Government Personnel Automobile Ass'n v. Haag, Tex.Civ.App., 131 S.W.2d 978, a case similar to the Springer case where-

in the Munger rule was applied to prevent a forfeiture. We do not believe that anything in the Springer case or any of the other authorities cited by Underwriters in any way overrules or limits the principle announced by the Texas Supreme Court in Munger.

■ Concluding, as we do, that under the governing law of Texas, the warranty, so called, of compliance with governmental regulations was not such a warranty in the technical sense as would render the policy ineffective or unenforceable upon a breach of it, we find it unnecessary to consider the other contentions of Hall. We do, however, consider the applicability of the "unlawful purpose" exclusion in the Hall policy. The clause reads, in pertinent part, as follows:

> "Exclusions.
>
> "This Certificate Does Not Cover Any Liability
>
> \*   \*   \*   \*   \*   \*
>
> "(5) Arising out of the operation of the Aircraft, with the knowledge and consent of the Assured or any executive officer if the Assured be a corporation.
>
> \*   \*   \*   \*   \*   \*
>
> "(c) for any unlawful purpose.
> \*   \*   \*"

Underwriters says that since the spraying operations were conducted without a permit and equipment license, in violation of state regulations, which violation constitutes a misdemeanor under the act authorizing the regulations,[1] the use of the aircraft was for an "unlawful purpose." In rejecting this contention, the district court said:

> "\*  \*  \* plaintiff's contention \*  \*  \* is without merit. The spraying of lands and vegetation thereon with herbicides by use of aircraft is not unlawful per se in Texas. The fact that Hall was not complying with said regulations promulgated by the Department of Agriculture of the State of Texas during the spraying operations in ques-

---

1. Art. 135b–4(14), Tex.Rev.Civ.Stat.

tion did not render said spraying operations unlawful within the meaning of the policy of insurance in question."

The court's conclusion is illustrated by the following colloquy:

"The Court: Now, about this unlawful purpose, what is your idea about that, Mr. Anderson? I think that provision of the policy, now, mind me, now, that these things have to be construed strictly against you?

"Mr. Anderson: Yes, I understand.

"The Court: I think that the very use of it, of itself is an unlawful use.

"Mr. Anderson: You mean like if he was hauling whiskey in a dry territory or something like that.

"The Court: Yes, that is right, something like that. But just because he did—in other words, the spraying of weeds out here with that herbicides is not an unlawful act.

"Mr. Anderson: Not per se.

"The Court: Not per se, the legislature has authorized the Commissioner of Agriculture to promulgate certain regulations regulating, but it is not unlawful per se spraying. I don't believe it would come there."

There was no purpose to do an unlawful act. The purpose was to spray by aircraft; a purpose recognized as lawful, even though regulated, by the Texas Legislature. We are of the same mind as the district court in reaching the conclusion that the failure to obtain a permit and equipment license did not make the use of the aircraft an unlawful use.

▇▇ When it has been determined that the breach of a policy provision has not rendered the insurance contract unenforceable, and such is the present case, the next inquiry is whether the breach has contributed to the loss. In the absence of a causal connection between the breach and the loss the breach is not a defense. Fidelity & Casualty Co.

v. Carter, 23 Tex.Civ.App. 359, 57 S.W. 315. Cf. Pennsylvania Fire Insurance Co. v. Waggener, 44 Tex.Civ.App. 144, 97 S.W. 541. The record contains no evidence tending to show that the failure of Hall to comply with the State regulations regarding a permit and equipment licenses contributed in any way to the losses which are alleged to have occurred and against which the policy was intended to insure. Both parties moved for a directed verdict. Hall's motion was on the ground that there was no evidence that the two violations relied upon by Underwriters were a contributing cause of the loss. That motion was denied. It should have been granted. For the entry of an appropriate judgment, the judgment of the district court will be reversed and the cause remanded.

Reversed and Remanded.