**ELECTRON MACHINE CORPORATION, Appellant,**

v.

**AMERICAN MERCURY INSURANCE COMPANY, Appellee.**

No. 18905.

United States Court of Appeals Fifth Circuit.

Dec. 21, 1961.

George T. Kelly, III, Kelly & Hurt, Orlando, Fla., for appellant.

Harry T. Gray, Francis P. Conroy, Sam R. Marks, Delbridge L. Gibbs, Jacksonville, Fla., for appellee; Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, Fla., of counsel, for appellee.

Before TUTTLE, Chief Judge, and JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

The appellee, American Mercury Insurance Company, issued a policy of insurance to the appellant, the Electron Machine Corporation, providing hull coverage in the amount of $20,000.00 on a Piper aircraft. The policy Declarations state that the insured aircraft was to be used for "Industrial Aid," which was defined as "Personal, Pleasure, Family and

Business uses, including transportation of executives, employees, guests and customers and including instruction of any person specified by name in Item 7, below, but excluding any operation for which a charge is made." Item 7, incorporated in the policy as an endorsement, provided:

"This policy applies when the aircraft is in flight, only while being operated by the following pilot(s): Pilots as specified in (4) below and any pilot who has a valid and effective Private or Commercial Pilot Certificate with appropriate ratings who meets each of the following minimum flight experience requirements specifically indicated by the figure X;

"[X]  (1) Not less than 1000 hours flight time as Pilot in Command;

"[X]  (2) Not less than 100 hours flight time as Pilot in Command in aircraft of the same Category, Class and Type as the insured aircraft;

"[X]  (3) Within the preceding 60 days has made at least 5 take-offs and landings to a full stop in aircraft of the same Category, Class and Type as the insured aircraft;

"[X]  (4) Carl A. Vossberg or A. E. Medefind."

On March 9, 1959, an endorsement added to the coverage of the policy a Piper PA–23 aircraft, and an additional premium was charged. Another endorsement changed the provision of paragraph (4) of Item 7, with respect to the Piper PA–23, so as to name as the "pilots specified" Carl A. Vossberg, A. E. Medefind or E. R. Holler. Among the Insuring Agreements of the policy is the following:

"This policy applies only to occurrences, and losses to the insured aircraft which are sustained, during the policy period while the aircraft * * is owned, maintained and used for the purposes stated as applicable thereto in the declarations."

The policy also contained, among its Conditions, the provision that:

"Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of the Company."

Bryant M. Bouslog was a pilot holding a valid license with flight requirements of (a) not less than 1000 hours flight time as pilot in command, (b) not less than 100 hours flight time in aircraft of the same category, class and type as the Piper PA–23; and (c) within the 60 days preceding August 30, 1959, had made at least five take-offs and landings to a full stop in aircraft of the same category, class and type as the Piper PA–23. J. L. Moody was a vice president and the Productions Manager of Electron. Bouslog was employed by Electron to instruct Moody in operating the Piper aircraft. On August 30, 1959, while Bouslog was giving instructions to Moody the aircraft crashed and was damaged or destroyed to an extent exceeding the policy coverage. American Mercury denied liability and assigned as the ground for its disclaimer that "the said James L. Moody was not listed for instruction." Electron brought suit. American Mercury and Electron both moved for summary judgment. The motion of American Mercury was granted and summary judgment for it was entered.

The appellant points to the affidavit of Carl A. Vossberg, its President, that he was advised by an agent of American Mercury that there would be coverage while Moody was working on a multi-engine rating if a second pilot either named or meeting the requirements of paragraphs 1, 2 and 3 of Item 7, or an instructor, were seated beside the student. This, says Electron, was a construction by American Mercury of an ambiguity in the policy which binds it under the doctrines of estoppel or waiver, or both, or

raises a fact issue which cannot be resolved by a summary judgment. So also, urges Electron, there is a fact question as to whether the instruction of Moody was included in the term "industrial aid" within the meaning of the policy. The rule is well settled that, although a contract of insurance is to be liberally construed in favor of the insured where there is an ambiguity or conflict in its terms, yet where there is no ambiguity or conflict and the provisions are clear, the language used will control, and it alone will be considered in the meaning of the policy and the coverage afforded by it. 13 Fla.Law & Prac. 167, Insurance §§ 206, 208; 18 Fla.Jur. 330, Insurance § 447; Indemnity Insurance Company v. duPont, 5th Cir., 1961, 292 F.2d 569; Fidelity & Casualty Co. v. Lott, 5th Cir., 1960, 273 F.2d 500; Goldsby v. Gulf Life Insurance Co., 117 Fla. 889, 158 So. 502; Price v. Southern Home Insurance Co., 100 Fla. 338, 129 So. 748; Aetna Casualty & Surety Co. v. Cartmel, 87 Fla. 495, 100 So. 802, 35 A.L.R. 1013; L'Engle v. Scottish Union & National Fire Insurance Co., 48 Fla. 82, 37 So. 462, 67 L.R.A. 581, 111 Am.St.Rep. 70, 5 Ann.Cas. 748.

■■ In this insurance contract we have provisions that afford coverage only when the insured aircraft is being used for the purpose of "industrial aid." This term is defined. The definition expressly includes the instruction of three named individuals. James L. Moody was not one of them. The crash of the aircraft which caused the damage to and substantial destruction of it occurred when it was being used for the instruction of Moody. We are not to rewrite the policy. This Court has said:

"We start with the proposition that our function is not to write insurance contracts. We are not underwriters. We must apply them as written by the parties, C. E. Carnes & Co. v. Employers' Liability Assurance Corp., 5 Cir., 101 F.2d 739; Maryland Casualty Co. v. Southern Farm Bureau Casualty Insurance Co., 5 Cir., 235 F.2d 679, even though the result compelled by the plain words used may appear or be thought to appear to be unreasonable, unduly harsh, or stringent. We cannot ignore them. We cannot substitute others for them. So at the start we must acertain whether the words used really leave a doubt or create uncertainty which needs construction. If not, the words control." Canal Insurance Co. v. Dougherty, 5th Cir., 1957, 247 F.2d 508, 512. See Zipperer v. State Farm Mutual Automobile Insurance Co., 5th Cir., 1958, 254 F.2d 853; Greyhound Corporation v. Excess Insurance Co. of America, 5th Cir., 1956, 233 F.2d 630; Aetna Casualty & Surety Co. v. Hanna, 5th Cir., 1955, 224 F.2d 499, 53 A.L.R.2d 1125.

The appellant stresses the qualifications of Bouslog as a pilot and seeks, successfully we think, to demonstrate that he not only met the test of the policy to pilot the aircraft but that he was, in fact, thoroughly qualified as a pilot. This, we think, is beside the point. If, as to us seems clear, the plane was being used for a purpose which removed it from the coverage of the policy, it becomes immaterial that other terms and conditions of the policy were fully complied with. The exclusionary clause marks the boundary of the coverage of the policy. The hazards against which a company is to insure are usually in the category of its business and the courts will not undertake to review its judgment or to hold it to the coverage of risks which it has expressly excluded. Lineas Aereas Colombianas Expresas v. Travelers Fire Insurance Company, 5th Cir., 1958, 257 F.2d 150. Since the aircraft was being used contrary to the policy provision at the time of the loss, the insurance was not in force, and it is immaterial that the excluded use was not a cause of the loss. Lineas Aereas Colombianas Expresas v. Travelers Fire Insurance Co., supra; Underwriters at Lloyd's of London v. Cordova Airlines, Inc., 9th Cir., 1960, 283 F.2d 659.

The judgment of the district court is Affirmed.