**RANGER INSURANCE COMPANY,**
Plaintiff-Appellant,

v.

**Mrs. Miriam G. CULBERSON, as Executrix of the Estate of W. A. Culberson, Defendant-Appellee.**

**Carol Brown MacLEAN, as Executrix,**
Plaintiff-Appellee,

v.

**Miriam G. CULBERSON, as Administratrix, Defendant-Third Party Plaintiff-Appellee,**

v.

**RANGER INSURANCE COMPANY,**
Third Party Defendant-Appellant.

No. 71-1515.

United States Court of Appeals,
Fifth Circuit.

Dec. 28, 1971.

Rehearing and Rehearing En Banc
Denied Jan. 26, 1972.

Dyer, Circuit Judge, dissented and filed opinion.

See also, D.C., 49 F.R.D. 181.

Lloyd Sutter, Sewell K. Loggins, E. Smythe Gambrell, Gambrell, Russell, Killorin, Wade & Forbes, Atlanta, Ga., for Ranger Ins. Co.

Gambrell & Mobley, Albert Sidney Johnson, Robert D. Feagin, III, Atlanta, Ga., for Miriam G. Culberson.

Swift, Currie, McGhee & Hiers, Glover McGhee, Atlanta, Ga., Pindar, McElroy, Connell, Foley & Geiser, Newark, N. J., Kreindler & Kreindler, Alan J. Konigsberg, New York City, for Carol Brown MacLean; Stanley J. Levy, New York City, of counsel.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

The facts of these two consolidated cases, both the tragic and the technical, are not in dispute. An airplane crash in New York claimed the lives of two men, and we are asked to construe the insurance policy that allegedly covered one of them, the pilot. The district court, on cross-motions for summary

judgment, held that the policy was in effect during the accident. We affirm.

W. A. Culberson, the insured and the pilot of the private airplane, styled a Cessna 210A, purchased his airplane and an insurance policy during the same day. These transactions and the delivery of the policy took place in the State of Georgia, where Mr. Culberson resided. At that time and at the time of the crash, Mr. Culberson held a valid student pilot's license. About a month after purchasing the airplane and insurance, Mr. Culberson flew from his home in East Point, Georgia, to Morristown, New Jersey, where he picked up B. A. MacLean as a passenger. It was on the next leg of the journey that the plane crashed near Oxford, New York, in a violent thunderstorm, killing both men.

Appellant Ranger Insurance Company, the insurer, paid $10,097.12 to an aircraft lienholder under a warranty endorsement in the policy, thereby becoming the assignee of a promissory note that had been secured by Culberson's mortgage to the aircraft seller. Ranger then sued Culberson's estate on the subrogated note to recover its payment. Ranger argued that Culberson's coverage was suspended during the accident because of violations of the policy. Thereafter, the executrix of passenger MacLean sued Culberson's estate in federal court, asking $750,000 for wrongful death. Culberson's executrix filed a third-party complaint against Ranger, seeking judgment that Ranger is bound to defend or to indemnify the Culberson estate under its policy. After the actions were consolidated by the district court, both Ranger and Mrs. Culberson, executrix of Culberson's estate, moved for summary judgment in both actions. F.R.Civ.Proc. 56(b). The district court granted Culberson's motions and denied those of Ranger. Ranger was held liable under the policy to defend and to indemnify the Culberson estate, and not entitled to recover its warranty payment. Ranger appeals.

Under Georgia conflicts law, it is the place of the delivery of the insurance contract that controls in this diversity suit. Float-Away Door Co. v. Continental Casualty Co., 5 Cir. 1967, 372 F.2d 701, cert. denied, 1967, 389 U.S. 823, 88 S.Ct. 58, 19 L.Ed.2d 76; Pink v. AAA Highway Express, Inc., 1941, 191 Ga. 502, 13 S.E.2d 337, aff'd, 1941, 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. 152; Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. In our case, the contract was made and delivered in Georgia to a Georgia resident, and we shall look to Georgia law. That law requires that policies be interpreted liberally and in favor of coverage. Johnson v. Mutual Life Ins. Co., 1922, 154 Ga. 653, 115 S.E. 14. In addition, any lack of clarity or any ambiguity in the policy is considered the responsibility of the insurance company, for it is the company that drafts the policies and must be required to draft clearly. Ga.Code Ann. § 20–704; Cherokee Life Ins. Co. v. Baker, 1969, 119 Ga.App. 579, 168 S.E.2d 171; Boston Ins. Co. v. Gable, 5 Cir. 1965, 352 F.2d 368; Float-Away Door v. Continental Casualty, *supra*. At the same time, this court has no intention of stretching for ambiguity when it is not there, and the plain meaning of the policy obviously controls. Canal Ins. Co. v. Dougherty, 5 Cir. 1957, 247 F.2d 508.

Both parties ask this court, as they asked the district court, to construe the language of an insurance policy. The policy is a standard one, mostly printed but with additional forms and riders typewritten or checked. All additional materials were prepared by Ranger on its own stationery. The policy before us is not a paradigm of clarity, and if there be ambiguities in the construction, the constructor must allow a green light to coverage in passing upon its words. If there be a red light, it, of course, will not be ignored; but even a yellow caution brings us much nearer the green one, calling for coverage. On appeal, Ranger asks us to conclude as a matter of law that the district judge was wrong in his assessment of this policy. On the

contrary, we quite agree with the district judge's assessments of both policy and law.

■ That concluded, we pose our question for review as a matter of law: Was it the intention of the parties from the terms of the policy, as such terms would reasonably be understood by the insured, that Culberson would be covered under the circumstances that later occurred? Ga.Code Ann. § 20–702; Stevens Industries, Inc. v. Maryland Casualty Co., 5 Cir. 1968, 391 F.2d 411, cert. denied, 392 U.S. 926, 88 S.Ct. 2285, 20 L.Ed.2d 1386; Loftin v. U. S. Fire Ins. Co., 1962, 106 Ga.App. 287, 127 S.E.2d 53; Royal Indemnity v. McClatchey, 1960, 101 Ga.App. 507, 114 S.E.2d 394. We must look at the policy as a totality, using the usual rules of construction of contracts, Ga.Code Ann. § 56–2419; Float-Away Door Co. v. Continental Casualty Co., supra; Stevens Industries, Inc. v. Maryland Casualty Co., supra.

■ On appeal, Ranger argues that Culberson's coverage was "suspended" during the alleged transgressions of the policy. This is in accord with the accepted principle of our court that a violation of an insurance provision does not operate to cancel a policy, but only to suspend its application to any accident that occurs during the violative acts. Lineas Aereas Colombianas Expresas v. Travelers Fire Ins. Co., 5 Cir. 1958, 257 F.2d 150. Specifically, Ranger's "suspension" argument centers around the fact that Culberson carried a passenger, admittedly in violation of the FAA regulations, and contrary to a provision that was stamped on his student certificate. From that fact, Ranger contends that coverage was suspended by any one of three clauses in the policy.

## I. THE PILOT CLAUSE

■ One of the provisions in Culberson's policy provided:

"Only the following pilot(s) will operate the aircraft while 'in flight' and while holding proper pilot certificate(s) with appropriate ratings as required by the Federal Aviation Agency:

*W. A. Culberson or any other private or commercial pilot having a minimum of 200 total logged hours including at least 25 hours in retractable gear aircraft.*"

[The italicized portion was typewritten by Ranger; the rest was printed.]

Ranger's argument goes as follows: Culberson would be covered only "while holding a *proper* certificate . . . with *appropriate* ratings"; because Culberson flew with a passenger, his certificate was "improper" and his ratings "inappropriate."

Ranger begins its first argument under the Pilot Clause by contending that Culberson's certificate was not "proper" within the sanctions of the Pilot Clause because his carrying of a passenger violated the face of his student certificate. The certificate had the notation "Passenger Carrying Prohibited" stamped in two places. We cannot agree.

■ We do not read the word "proper" as requiring exact compliance with the face of the certificate. It is quite proper for an insurance company to insure a pilot for any permutation of circumstances, whether or not that permutation involves conduct that violates the certificate or the FAA regulations. Fireman's Fund Ins. Co. v. McDaniel, N.D.Miss.1960, 187 F.Supp. 614, aff'd, 5 Cir. 1961, 289 F.2d 926. It is the policy, not the pilot's certificate nor the FAA regulations, that sets the perimeters of insurance coverage.

■ In viewing the totality of the policy, we observe that omitted form paragraphs are parts of a written document. They serve to explain the intent of the parties, just as typewritten or handwritten statements serve to clarify or to change the sense of printed paragraphs. See Royal Indemnity v. John F. Cawrse Lumber Co., D.Or., 1965, 245 F.Supp. 707; Aetna Life and Casualty Co. v. Charles S. Martin Distributing Co., 1969, 120 Ga.App. 133,

169 S.E.2d 695; Fireman's Fund v. Mc-Daniel, *supra*. Ranger included an additional page of printed exclusions in Culberson's policy. The page had four exclusions, with boxes to the side that Ranger was to check if applicable to the policy. Of the four exclusions printed on the page, only two were checked by Ranger as applying to Culberson. Those two checked exclusions are not relevant here. One omitted exclusion reads:

"It is agreed that this policy does not apply and no coverage is afforded to any insured while any aircraft insured under this policy is being operated by a Student Pilot unless said Student Pilot is under the direct supervision of a properly qualified FAA Certified Flight Instructor who shall have specifically approved each flight undertaken by the student prior to take-off. This exclusion shall not apply to any Student Pilot after he has received his Private Pilot Certificate."

By failing to check that provision, we must assume that Ranger fully intended to insure a student pilot.[1]

1. Culberson dealt directly only with the Guy Hill Insurance Agency, Ranger's agent. Under Georgia law the insurer is estopped to deny any misconduct or negligence by its agents, and the company is deemed to have constructive knowledge of any facts of which the agent has actual knowledge. Stillson v. Prudential Ins. Co., 1947, 202 Ga. 79, 42 S.E.2d 121; Reserve Life Ins. Co. v. Ayers, 1961, 217 Ga. 206, 121 S.E.2d 649; National Life & Accident Ins. Co. v. Goolsby, 1955, 91 Ga.App. 361, 85 S.E.2d 611; Barber v. All American Assurance Co. of Louisiana, 1953, 89 Ga.App. 270, 79 S.E.2d 48. In addition, the burden under Georgia law is on the insurer to prove any facts regarding misrepresentation or fraud. Reserve Life Ins. Co. v. Ayers, *supra;* Lamb v. Empire Life Ins. Co., 1954, 143 Ga. 180, 84 S.E. 439; O'Connell v. Supreme Conclave Knights of Damon, 1943, 102 Ga. 143, 28 S.E. 282. At no point in the record is there any evidence whatsoever that Culberson was less than candid in his representations to Guy Hill. Culberson's application to Ranger for insurance was signed *only* by Guy Hill, not by Culberson himself, and we have no indication in the record that Culberson even saw that document. Compare Jessup v. Franklin Life Ins. Co., 1968, 117 Ga.App. 389, 160 S.E.2d 612; State Farm Mutual Automobile Ins. Co. v. Anderson, 1963, 107 Ga.App. 348, 130 S.E.2d 144. In the answer to an interrogatory and in an affidavit submitted by the vice-president of its underwriters, Ranger asserts that *it* did not have actual knowledge that Culberson was only a student pilot. This assertion, of course, does not answer in any way any of the factual or legal questions raised by the transaction that took place between Culberson and Guy Hill. Under the circumstances of this case, with the exception of actual misrepresentation by Culberson, Ranger is charged with knowledge of whatever took place in Guy Hill's office, even if what took place was that, through the negligence of the agent, nothing at all was said regarding the status of Culberson's license. Without Culberson's signature on the application to Ranger, the court below could only conclude that the information on the application came about through the negligence of the agent, the misconduct of the agent, or the misrepresentations of Culberson.

On appeal and in its brief in support of its motion for summary judgment below, Ranger raised the inference that Culberson had misrepresented his level of flying expertise. This will not do. There is simply no scrap of direct evidence in the record that Culberson misrepresented himself *to Guy Hill*, which is the crucial question regarding insurance information. Moreover, any alleged fraud or misrepresentation between Culberson and Guy Hill must be raised in the pleadings, not by inference. If not so raised, the defense is waived. Fed.Rules Civ.Pro. 8 (c); Systems Inc. v. Bridge Electronics Co., 3 Cir. 1964, 335 F.2d 465. Ranger did not raise in the district court any question of misrepresentation by Culberson to Guy Hill, a question clearly within Ranger's scope of information, and, therefore, the question of misrepresentation is not properly before us. In fact, we do not find in Ranger's evidence in support of its own motion for summary judgment any statement that Culberson was guilty of misrepresentation or fraud. In this case, Ranger, upon entering the arena erected for deciding cases on summary judgment, must abide its Marquis of Queenberry Rule which requires that a party submit facts, not hypotheses, of fraud or misrepresentation before it is entitled to summary judgment.

Ranger not only omitted the exclusion that specifically forbade coverage to student pilots, but also omitted an exclusion that read as follows:

> "The following Exclusion is added to the Exclusions of the Policy: . . . to any Insured who operates or permits the aircraft to be operated . . *in violation of any regulation pertaining to pilot certificates.*" [Emphasis added.]

Ranger's failure to check that exclusion is of some consequence in its argument that an infringement of the pilot certificate is an "impropriety" that negates coverage under the Pilot Clause. This omission is even more significant in light of the one extant Georgia case on the question of Pilot Clauses and non-compliance with the pilot certificate. In Grigsby v. Houston Fire and Casualty Co., 1966, 113 Ga.App. 572, 148 S.E.2d 925, the court held that the pilot's failure to complete the required number of practice take-offs and landings and his failure to obtain a current medical certification violated the terms of his pilot's certificate, and therefore suspended coverage. However, the insurance policy in *Grigsby* contained an exclusion specifically providing that there should be no coverage when the aircraft was operated "in violation of any regulations pertaining to Airman's Certificates." The exclusion that Ranger chose to omit in Culberson's policy suspended coverage whenever there were operations "in violation of any regulation pertaining to pilot certificates." While not precisely the same, the language and, we think, the intent of the two passages are close enough to lend weight to our concern with Ranger's omission. Ranger, through an affidavit from the vice-president of its aviation managers, argues that the omitted exclusion was intended to be ap-

plicable only to "flying clubs." True or not, that is not quite relevant to our inquiry here. We wish to know what Culberson's reasonable expectation was when he read that exclusion page, saw two items checked as applicable, and saw the "pilot certificate" exclusion left unchecked as inapplicable. We feel that the words compel only one reasonable meaning, and that is that the omitted provision is intended to apply to whoever is insured. Without further explanation in the policy, Ranger cannot at this date stamp an "only applicable to flying clubs" into the policy.

In sum, if Ranger wished to suspend coverage in the event of any violation of Culberson's pilot's certificate, then it should have specifically said so in the policy. We do not read that specificity into the word "proper" in Ranger's behalf, and we find support for our decision in the fact that Ranger itself chose not to include easily-available form language that would have readily provided the necessary specificity.

The case of Roach v. Churchman, 8 Cir. 1970, 431 F.2d 849, does not support Ranger on this point. There is one statement by the Eighth Circuit regarding violation of a pilot's certificate, but the context of that statement makes it quite inapposite here. The policy provision in *Roach* specifically stated that a violation of the certificate would suspend coverage, a stipulation very much akin to the *Grigsby* provision and to Ranger's *omitted* exclusion. We might also note that the holding of *Roach* was that a violation of certain sections of the FAA regulations would *not* operate to suspend coverage under two separate exclusions, one that suspended coverage in case of violation of the pilot certificate and another that suspended coverage in case of "unlawful purpose." We find

Ranger's defense in the court below, as demonstrated by its pleadings, its affidavit in support of its own motion for summary judgment, Culberson's application for insurance, and its entire argument on appeal is addressed to policy construction; Ranger does not seek a remand for a trial. Without the mis-

representation issue Ranger must rely only on the written insurance policy to claim lack of coverage, construed under the presumption that Ranger, through its agent, fully intended that the policy read precisely as it was made out to Culberson.

the rationale of that holding quite in concert with our decision here.

■ Secondly, with respect to the Pilot Clause, Ranger insists that Culberson's admitted violation of the Federal Aviation Regulations in carrying a passenger operated to make his certificate "improper." 14 C.F.R. § 61.3(a). Again, we cannot agree. We would assume that an "effective" certificate is a "proper" one, however one might wish to muddle those words about. The FAA regulations provide specifically that any pilot certificate (including a student certificate) cases to be "effective" only if it is "surrendered, suspended, or revoked." 14 C.F.R. § 61.9. None of the three "if's" attached to Culberson's certificate. The student certificate provides on its face only that the certificate *might* be revoked by the carrying of a passenger in violation of the regulations.[2] Thus the fact that Culberson carried a passenger did not, *ipso facto*, revoke or suspend his certificate. *See* United States v. Eagle Star Ins. Co., 9 Cir. 1952, 196 F.2d 317, rev'd on other grounds on reh., 1963, 201 F.2d 764. Mr. Culberson held a perfectly "proper" certificate at the time of his accident, even though his conduct was regulated by the FAA, and the certificate remained "proper" until it was suspended or revoked by discretionary act of the FAA. *See* Hall's Aero Spraying, Inc. v. Underwriters at Lloyd's of London, 5 Cir. 1960, 274 F. 2d 527; *see also* Roach v. Churchman, *supra*.

■ If Ranger wishes us to read the general term "proper" as requiring that *any* transgression of an FAA regulation should operate as an "impropriety" of sufficient intent to suspend coverage, then our declining to read a general word so broadly should come as no surprise, for we have declined to do so before. Hall's Aero Spraying v. Lloyd's of London, *supra; accord*, Roach v. Churchman, *supra*.[3] Words of exclusion in insurance policies should be given small tolerance when insurance companies choose to use words of imprecision. Indeed, the logic of Ranger's argument for exclusion would be to engraft as exceptions to coverage the violation of every proscribed peccadillo of FAA regulations. The cases cited by Ranger in its support go to the heart of coverage, and it cannot be that every impaired capillary blocks coverage. Almost all airplane accidents involve some violation of the Federal Aviation Regulations. Even "careless flying," or simply negligence, is a violation. *See* 14 C.F.R. § 91.9. The *Roach* case construed a similar argument:

> "Applying this analysis, the insuring agreements become illusory in effect since few accidents occur without the aircraft's owner or pilot violating one or more of the very detailed regulations promulgated by the Federal Aviation Administration."

431 F.2d at 853.

To read into the general word "proper" all violations of the regulations would be

2. "A violation of this limitation *may* result in the REVOCATION FOR ONE YEAR of this certificate or any pilot certificate subsequently issued."
 [Emphasis added]

3. Ranger's asserted construction might also be contrary to Georgia policy:
 "No policy of insurance issued or delivered in this State covering any loss, expense or liability arising out of the ownership, maintenance or use of an aircraft shall exclude or deny coverage because the aircraft is operated in violation of civil air regulations pursuant to Federal, State or local laws or ordinances.

"This section does not prohibit the use of *specific* exclusions or conditions in any such policy which relates to any of the following:
 (a) Certification of an aircraft in a stated category by the Federal Aviation Administration.
 (b) Certification of a pilot in a stated category by the Federal Aviation Administration.
 (c) Establishing requirements for pilot experience.
 (d) Establishing limitations on the use of the aircraft."
Ga.Code Ann. § 56–2439. [Emphasis added]

to hoodwink most insurance purchasers, for it would make a nullity of most coverage. Purchasers believe, and with good reason, that they have bought insurance to protect themselves from precisely those degrees of negligence or outright carelessness that FAA regulations might condemn. Insurance is procured to protect the violator, and every violation cannot nullify coverage. Any intent to use general words as a blunderbuss and every single regulation as birdshot cannot be reasonably upheld. If an insurance company has an intent to deny coverage in a specific set of circumstances, then it should so delineate. *See* Moulor v. American Life Ins. Co., 1884, 111 U.S. 335, 4 S.Ct. 466, 28 L.Ed. 447.

[16] Ranger's third and final argument, with regard to the pilot clause is that the coverage should be suspended because Culberson did not have a "proper instrument flight rating." In the *Roach* case, *supra*, the Eighth Circuit was faced with a simlar argument concerning a full-fledged pilot who did not have proper "instrument flight rating" because he did not complete the required number of practice flights before flying at night. We have a student pilot. The pilot clause of *Roach* specifically allowed for suspension of coverage during acts in violation of the pilot certificate. Our pilot clause does not. Yet even under the former circumstances, the *Roach* court held that a general term in the pilot clause could not be interpreted to suspend coverage during any and all violations of the Federal Aviation Regulations. We took a similar approach in *Hall's Aero Spraying, supra,* on which the Eighth Circuit relied in *Roach.*

But we find another element controlling the "appropriate rating" issue in our case. "Ratings" of any sort are not given to student pilots, according to the regulations that we are asked to apply. 14 C.F.R. § 61.16(d) (1) and § 61.16(b). It was therefore quite impossible for Culberson, at any time, to receive an "instrument flight rating" or any other rating. And we are now asked to conclude that this fact suspended insurance coverage. Actually, what Ranger asks us to do is to invalidate the insurance policy. If the absence of flight ratings is an "inappropriate" rating within the ambit of the pilot clause, then, with no possibility of flight ratings of any sort, Culberson would be flying in constant violation of his policy; whatever he did would have an "inappropriate" rating. We refuse to hold that Culberson contracted to pay a premium of $553 per year for a policy that was "suspended" *ab initio.* When Ranger agreed to insure a student pilot, it was charged with the knowledge that he could not obtain any flight ratings whatsoever while he held that type license. Ranger is estopped from trying to raise "appropriate ratings" from the dead at this point.

The case of Lineas v. Travelers Fire Insurance, *supra*, cited by Ranger in its brief with regard to the pilot clause, is quite inapposite. In *Lineas*, a diversity action controlled by Florida law, the company insured an airplane for cargo purposes. The pilot clause of that policy provided that the airplane should be flown only by those regular pilots of the insured who held licenses issued by United States or Colombian authorities. The insured made his airplane available to a coadventurer for flights within the borders of Mexico, knowing that under Mexican law the craft would have to be registered as a Mexican airplane and would have to be piloted by Mexican pilots. The airplane crashed in Mexico, with Mexican pilots at the controls, while it was carrying passengers and no cargo. The incidents of *Lineas* operated to change fundamentally the matrix of the risks that the company had agreed to insure. The Mexican pilots who were in command when the airplane crashed were entirely outside the whole species of pilots specified in the pilot clause. In our case the pilot flying the airplane was well within the clause, specifically named in fact. The Mexican pilots of *Lineas* were not authorized to fly the plane at any time. Culberson was clearly authorized to fly the air-

plane. And, as we have discussed above, the pilot clause did not operate to forbid the carrying of passengers. Whether other provisions of the policy would suspend coverage in the event of passenger carriage remains to be explained. We refer now only to the pilot clauses of our case and of *Lineas*. We might add, however, that the ill-fated flight of *Lineas* involved a purpose entirely without the very specific purpose for which the insurance company had contracted, the carrying of cargo. In our case Culberson's flight was entirely within the purposes that Ranger agreed to cover.[4] Therefore, we find *Lineas* inapplicable to our policy and our set of facts.

## II. EXCLUSION TWO

The second provision of the policy on which Ranger bases this appeal reads as follows:

> "This policy does not apply . . . to any occurrence or to any loss or damage occurring while the aircraft is operated while in flight, by other than the pilot or pilots set forth under Item 7 of the Declarations [the Pilot Clause]."

Ranger argues that the accident occurred when the airplane was operated by "other than the pilot set forth" under the Pilot Clause, thereby suspending the coverage during such activity. However, if the pilot clause and attendant facts cannot suspend coverage, then we find it quite impossible to conclude that Item Two of the printed exclusions works the suspension that Ranger seeks.

It is uncontroverted that Culberson flew the airplane, and that Culberson is specifically named in the typed portion of the Pilot Clause. Exclusion Two does not incorporate by its terms all of the

Pilot Clause; it refers only to those pilot(s) "set forth" in the clause. Exclusion Two specifically omits any reference to or incorporation of the printed part of the Pilot Clause, which is the part of the clause that included the phrase "while holding a proper pilot certificate . . . with appropriate ratings as required by the Federal Aviation Agency." It was that printed phrase that drew our attention in our discussion of the entire Pilot Clause above. Without reference to "propriety" or "appropriateness," Exclusion Two simply requires that the airplane be operated only by the "pilot . . . set forth under Item 7 of the Declarations [the Pilot Clause]." It is our conclusion that the exclusion does not apply to these facts. The airplane was at all times operated by Culberson, the specifically named pilot of the referent Pilot Clause. Under similar circumstances, we have held that a pilot specifically named is clearly covered, even if flying in violation of the regulations. Fireman's Fund v. McDaniel, *supra*. In fact, our understanding of Exclusion Two brings our case almost four-square with *McDaniel*. In *McDaniel*, as here, the name of the pilot was specifically typed into the clause, along with an "other pilots" phrase similar to that in the Ranger policy. As here, the student pilot in *McDaniel* carried a passenger when he crashed. In spite of the fact that the company in *McDaniel* had included almost precisely the same two exclusions that Ranger omitted here, the district court held that the specifically-named student pilot had been insured to fly the aircraft for *any* purpose. We affirmed that part of the holding. Without further provision by Ranger, *McDaniel* controls on the issue of Ranger's Exclusion Two, and that exclusion does not bar cov-

4. The policy in *Lineas* did have a provision that excluded coverage in the event that the flight's purpose were one that required a special FAA permit (unless that purpose were endorsed by the company on the policy), or in the event that the flight were for an "unlawful" purpose. The former proviso is similar to

Ranger's Exclusion Three, but the *Lineas* court did not construe that proviso. It rested its decision on the pilot clause and on the overall intent of the parties. See also Electron Machine v. American Mercury Ins. Co., 5 Cir. 1961, 297 F.2d 212.

erage to the named insured under these circumstances.

## III. EXCLUSION THREE

 The final policy provision that Ranger contends suspended Culberson's insurance coverage provides:

"This policy does not apply . . . to any insured . . . who operates or permits the aircraft to be operated in any manner which requires a special permit or waiver from the Federal Aviation Agency, whether granted or not, unless this Policy is specifically endorsed to include such operation."

Ranger argues that Culberson violated a regulation by carrying a passenger [14 C.F.R. § 61.3(a)], that he did not obtain a waiver from the FAA for the act of carrying a passenger [49 U.S.C.A. § 1421], and that Ranger did not endorse the carrying of a passenger.

We conclude that Exclusion Three does not apply to suspend coverage in this instance. Even if applicable to Mr. Culberson under *McDaniel,* the terms of Exclusion Three were met. The policy did not require a waiver by the FAA; it required only an endorsement of "such operation" by the company. We have already concluded that Ranger is to be charged with knowledge that Culberson, at his application as well as at his death, was a student pilot and no more. We then note that passenger coverage is specifically *"in"*-cluded in the policy, the "in" having been typed into a blank space in the policy, in capital letters, by Ranger. For that "in," Culberson paid an *additional* premium of $175 per year, almost 50% more than the premium without the passenger coverage. Ranger argues that the passenger proviso relates only to the "other pilots" that are mentioned in the typed portion of the Pilot Clause and not to Culberson himself. We find this quite an improbable construction. There is certainly nothing in the provision itself to indicate that the "in"-clusion goes to one part of a conjoined sentence and not to the other. Moreover, the fact that Culberson's name is specifically typed into the clause indicates to us that the passenger proviso, which falls on the same page and in close proximity of the Pilot Clause, was fully intended to apply to Culberson. This is another one of those occasions in which a construction seems compelled by the words. If Ranger intended to convey something less by checking this proviso and charging the additional premium, then that should have been clearly stated. By "in"-cluding the passenger coverage provision, Ranger specifically endorsed his "operation" of the aircraft with a passenger aboard for the purposes of Exclusion Three.

In a sense broader than the three clauses we have discussed above, we feel that Ranger contracted for precisely the matrix of risks that eventually came to fruition. Compare Underwriters at Lloyd's of London v. Cordova, 9 Cir. 1960, 283 F.2d 659. Ranger insured a student pilot and "in"-cluded passenger coverage, omitting specific exclusions that might have foreclosed the entire issue.

The clumps of words in an insurance policy might seem like so much insignificant jabberwocky to those who follow insurance law, perhaps worse to those who only stumble into the field. Jabberwocky it might be. Insignificant it is not. On those clumps of words rests the intent of the insurance coverage. Some insurance policies, their riders, exclusions, folds-in and folds-out, and appendages, are festooned in such ways that mechanical knowledge is a help in unfolding and laying them out so that the policies are in physically readable form. An insured, who is presented with forms and discussion in widely varying degrees of clarity, is entitled to know the precise nature of the insurance coverage that his premiums are buying. It is all too clear that contract language, while at times a great explainer, is at times a great obscurer. It is incumbent upon insurance companies to state clearly the perimeters of their coverage to those who entrust their security to them. Partly in the

hope that that clarity might eventually come to pass, this case is affirmed.

Affirmed.

DYER, Circuit Judge (dissenting):

I respectfully dissent. The crucial issue in this appeal is whether "The Pilot Clause" under the "Declarations" in the policy issued by Ranger to Culberson means *exactly* what it says and says *exactly* what it means. The pilots's clause provides:

"Only the following pilot(s) will operate the aircraft while 'in flight' and while holding proper pilot certificate(s) with appropriate ratings as required by the Federal Aviation Agency:

*W. A. Culberson or any other private or commercial pilot having a minimum of 200 total logged hours including at least 25 hours in retractable gear aircraft.*"

[The italicized portion was typewritten by Ranger; the balance was printed.]

The majority opinion introduces the unsupportable assumption "that Ranger fully intended to insure a student pilot." It then charges Ranger "with knowledge that Culberson, at his application as well as at his death, was a student pilot and no more." Finally, it flatly states that "Ranger insured a student pilot . . . ." Upon this premise then the majority "does not read the word 'proper' as requiring exact compliance with the face of the [pilot's] certificate." In fact, the majority requires *no* compliance with the pilot certificate which expressly forbade Culberson from carrying passengers. There is not one iota of evidence in the record to support the majority's assumption, charge or conclusion that Ranger knew that Culberson was a student pilot. On the contrary, the only information that Ranger had was that Culberson held a private pilot's license.

The district court decided this case on cross motions for summary judgment. Before the court was the following: Ranger's answer to an interrogatory that

the policy was based on an application which stated that Culberson, the named insured, was a private pilot, and the application submitted by an insurance agent which contained the name and address of Culberson and detailed information that was copied directly into the "Declarations" of the policy, i. e., the policy period from August 1, 1967 to August 1, 1968, that the aircraft would be tied out at Fulton County Airport, the specific coverages and premium charges, a description of the aircraft, the purposes of use, and a loss payable clause to the mortgagee, Michigan National Bank, in the amount of $10,100. The application further contained pilot information showing that Culberson held a private pilot's certificate with a single engine rating with a total of 100 logged hours, 15 in retractable gear aircraft, and described other pilots who could operate the insured aircraft with a private license and 200 total logged hours, 25 in retractable gear. There was also the uncontradicted affidavit of Parks, Senior Vice President of the aviation managers of Ranger, in which he stated that "Ranger Insurance Company had no knowledge that Mr. Culberson had only a student pilot license, as it had been represented to the company that he held a private pilot license with a single engine rating." The district court also had before it the policy with the pilot clause limitations which tracked the information in the application, and a certified copy of Culberson's Student Pilot Certificate issued January 21, 1966, on which was marked in two places, "PASSENGER CARRYING PROHIBITED."

I would have no hesitancy in joining with the majority had Ranger issued the policy as written with knowledge that Culberson was a student pilot. The insurer may knowingly undertake a risk although it involves pilot conduct that violates his certificate or FAA regulations. And an insurer may be bound if the typewritten portion of the pilot's clause names the insured "as a person authorized to operate this aircraft in flight, without regard to his certifica-

tion or rating as a pilot" even though the insured is a student pilot. Fireman's Fund Insurance Company v. McDaniel, N.D.Miss.1960, 187 F.Supp. 614, aff'd 5 Cir. 1961, 289 F.2d 926. But this is, of course, not this case. Furthermore, the form, omitted as inapplicable, excluding coverage when the aircraft was being operated by a student pilot not under the direct supervision of a FAA flight instructor, would, as the majority suggests, be of considerable moment to explain the intent of the parties, but only if Ranger was aware of Culberson's student pilot certificate. If Ranger knew this, then the omission of the exclusion would have been compelling evidence of Ranger's intent to insure Culberson, notwithstanding he held only a student pilot certificate.

It bears repeating that Ranger did not know and was not charged with any knowledge that Culberson held a student pilot's certificate. In the face of a record showing only that Ranger's information was that Culberson held a private pilot's certificate, the failure of Ranger to check the omitted exclusion cannot provide this court with the basis for an *assumption* "that Ranger fully intended to insure a student pilot." Quite the contrary is true, for if Culberson had held a private pilot certificate as Ranger thought he did, the student pilot exclusion would have been inapplicable.

The majority seems to take the position that the information furnished Ranger that Culberson was a private pilot cannot be considered because Ranger did not plead fraud and misrepresentation, nor was this issue considered by the court below. As we have shown, the application for insurance, the uncontradicted affidavit, and the answer to interrogatory were before the district court in support of Ranger's motion for summary judgment. They were not submitted for the purpose of showing fraud but for the evidentiary purpose of showing that the policy was written in conformity with the information Ranger possessed. This makes F.R.Civ.P. 8(c) inapposite. The crucial issue of whether this information was properly raised in the district court and hence properly before us cannot be glossed over in a footnote as the majority attempts to do. If Culberson had held a private pilot's certificate, as was Ranger's information, "Liability Including Passengers" would have been an appropriate coverage; Exclusion No. 3, covering student pilots, would have been inapplicable and the words "with appropriate ratings" in the pilot clause would have had significance, in contrast to the fact that "ratings" of any sort are not given to student pilots.[1] But if Culberson was going to fly in violation of his FAA certificate and thereby increase the risk for passengers covered, Ranger should have been made aware of it and given an opportunity to decline the risk. In my view, Ranger was entitled to rely on the information furnished to it and the district court should not have ignored it.

But assuming *arguendo* that Ranger had no information concerning what type of certificate Culberson held, it was, of course, entitled to limit the coverage of the policy in any manner it desired. The limitations of coverage in the policy are perfectly clear and Culberson was bound by them. He knew that his student pilot certificate prohibited him from carrying passengers any time, any where. He knew that the "Including Passengers" provision would only be applicable when either a private or commercial pilot certificate holder, as specified in his policy, was flying the aircraft with passengers. He knew that his policy required him to have a proper pilot certificate. This could only mean that he was within the policy coverage if he flew the aircraft alone and that there would be no coverage while passengers were aboard.

Equating the word *proper*, as used in the insurance policy, with the word *effective*, which is not used in the policy,

---

1. It is noteworthy that the application also referred to Culberson as having a single engine rating.

is, I deferentially suggest, an unwarranted exercise in semantics by the majority. We have repeatedly stated that

> * * * our function is not to write insurance contracts. We are not underwriters. We must apply them as written by the parties * * * even though the result compelled by the plain words used may appear or be thought to appear to be unreasonable, unduly harsh, or stringent. We cannot ignore them. We cannot substitute others for them.

Canal Insurance Company v. Dougherty, 5 Cir. 1957, 247 F.2d 508, 512. Of course, Culberson's student pilot certificate was effective until it was suspended, surrendered or revoked, but it was, nonetheless, an improper certificate when used by a student pilot to carry passengers. That the FAA did not revoke Culberson's certificate after his death seems wholly immaterial. Neither Halls' Aero Spraying, Inc. v. Underwriters at Lloyds London, 5 Cir. 1960, 274 F.2d 527, nor Roach v. Churchman, 8 Cir. 1970, 431 F.2d 849, are to the contrary. In *Hall's* the aircraft crashed while crop dusting without a state permit. This activity was not within the exclusion prohibiting the operation of an aircraft "for any unlawful purpose." In *Roach* the court found that "the pilot's act * * * did not violate any *express* term of his pilot's certificate." (Emphasis added).

We are not concerned, as the majority suggests, with an attempt to "hoodwink" the insurance purchaser by nullifying coverage for simple negligence, careless flying or some other violation of the regulations. The word "proper" refers solely to and modifies "pilot certificate" and clearly has nothing to do with avoiding liability for tortious conduct.

Whether we accept the fact that Ranger was informed that Culberson held a private pilot's certificate, or whether Ranger was without knowledge that Culberson held only a student's pilot certificate, the policy as written and accepted by Culberson insured him while he was flying the aircraft without passengers (even though the insurer might not have agreed to this coverage had it known that it was insuring a student pilot, *McDaniel, supra*); but coverage was suspended during the time that Culberson was operating the aircraft with a passenger because this was expressly prohibited by his certificate. Lineas Aereas Columbiana Expresas v. Travelers Fire Ins. Co., 5 Cir. 1958, 257 F.2d 150. In *Lineas* Judge Brown made it clear that "underwriting is the business of estimating risks." In doing so may not an insurer have properly taken into account that a student pilot is less qualified than one who has obtained a private pilot's certificate; that one holding a private pilot's certificate is authorized to carry passengers while a student pilot is forbidden to do so; and finally that covering a pilot in flight while he was doing what was expressly forbidden by his certificate would expose the insurers to almost incalculable risks?

> It is just such considerations that have led to the development of the principle * * * of suspension of coverage. It is, of course, true that development of the law along these lines has come from the desire to avoid an outright forfeiture. Consequently coverage is not permanently destroyed. It is suspended as long as, but only so long as the violations of the specified basic policy requirements continue. Equally clear, coverage is revived the moment the breaches or conditions cease. But until that time, there is no insurance for while the proscribed activity continues, the insurance is suspended as if it had never been in force. Travelers Protective Association of America v. Prinscen, 291 U.S. 576, 582, 54 S.Ct. 502, 504, 78 L.Ed. 999, 1003.

*Lineas, supra* at 155. *See also* Electron Machine Corp. v. American Mercury Insurance Co., 5 Cir. 1961, 297 F.2d 212.

The factual distinction that the majority makes between *Lineas* and the case *sub judice, i. e.,* that in *Lineas* the Mexican pilots were entirely outside

those specified in the pilot's clause, while here Culberson was authorized to fly the aircraft, continues to disregard the fact that from the time a passenger came aboard Culberson was also entirely outside the specie of pilot specified in the pilot's clause.

In this diversity case, as the majority points out, Georgia law is controlling. In Grigsby v. Houston Fire & Casualty Ins. Co., 1966, 113 Ga.App. 572, 148 S.E. 2d 925, the Georgia Court of Appeals cited *Lineas* with approval and held that a pilot clause almost identical to the one in issue here was "a valid and binding one." Although there was no coverage due to a violation of a regulation pertaining to pilot certificates under an exclusionary clause in *Grigsby*, the court also relied upon the conditions of the pilot clause. Obviously, the court would not have discussed the pilot clause except for the fact that its violation also suspended coverage.

The district court and the majority seem unwilling to give effect to the sound precedent established by this court that:

> The hazards against which a company is to insure are usually in the category of its business and the courts will not undertake to review its judgment or to hold it to the coverage of risks which it has expressly excluded.

*Electron, supra* at 214 of 297 F.2d.

I would reverse the judgment of the district court with directions to enter judgment in favor of Ranger.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

DYER, Circuit Judge (dissenting):

For the reasons heretofore stated, I dissent from the denial of the petition for rehearing.