48243. ALLEN v. SMITH & MEDFORD, INC. et al.

ARGUED MAY 29, 1973 — DECIDED JULY 12, 1973 — REHEARING DENIED JULY 31, 1973 —

540

*Peek, Whaley & Haldi, Glenville Haldi, H. Grady Thrasher, III, J. Robert Hardcastle,* for appellant.

*Alston, Miller & Gaines, Ronald L. Reid,* for appellees.

QUILLIAN, Judge. 1. The principal question presented by this appeal is whether the securities in question were governed by the Georgia Securities Act. Code Ann. § 97-101 et seq. (Ga. L. 1957, p. 134). Code Ann. § 97-104 (Ga. L. 1957, pp. 134, 138; 1959, pp. 89, 91; 1960, pp. 957, 958; 1963, pp. 557, 558; 1970, p. 488) provides: "It shall be unlawful to sell or offer to sell any securities within this State, except these exempt under Section 5 (97-106) or those sold in transactions exempt under Section 6 (97-107), until registration of such securities shall have become effective by notification under

subsection (a) or by qualification under subsection (b) of this section." Under the definition of terms contained in Code Ann. § 97-102: "(d) 'Offer to sell' or 'offer for sale' shall mean every attempt or offer to dispose of, or solicitation of an order or offer to buy, a security or interest in a security for value. . . (f) 'Sale' or 'sell' shall mean every sale or other disposition of a security or interest in a security for value, and every contract to make any such sale or disposition." (Ga. L. 1957, pp. 134, 135; 1959, pp. 89, 90; 1960, pp. 957, 958; 1963, p. 557; 1969, p. 722; 1970, p. 450.) Code Ann. § 97-114 (Ga. L. 1957, pp. 134, 161) further provides: "Every sale or contract for sale in violation of any of the provisions of this Chapter, or of any order issued by the commissioner under any provision of this Chapter, shall be voidable at the election of the purchaser."

"In any action, civil or criminal, a certificate signed and sealed by the commissioner, stating compliance or noncompliance with the provisions of this Chapter, shall constitute prima facie evidence of such compliance or noncompliance with the provisions of this Chapter and shall be admissible in any such action." Code Ann. § 97-115 (b) (Ga. L. 1957, pp. 134, 162). A certificate by the Secretary of State was introduced which stated that he found no evidence of an application having been filed for registration of the sale of the securities and that an order granting an exemption from registration had never been granted to the defendant Smith & Medford, Inc.

There are no Georgia appellate decisions dealing specifically with the application of the blue sky law to securities involving transactions with contacts in states other than Georgia. For decisions dealing peripherally with this area, see e.g., *Fine v. Bradford,* 109 Ga. App. 380 (136 SE2d 147) and *Mansour v. Rankin & Co.,* 121 Ga. App. 134 (173 SE2d 108).

Counsel for both the plaintiff and the defendants have dealt at length on the conflicts of law question relative to blue sky laws. A thorough discussion of this problem is contained in Blue Sky Law, Loss & Cowett, Ch. 5, p. 180 et seq., cited by both sides. As pointed out in that book, various other states in deciding the applicability of their blue sky laws have used several tests in making their determination. These tests or theories for solution are predicated on (1) place of contract; (2) place of performance; (3) place of solicitation. It is also recognized, as another theory, that more than one state's laws may be found applicable. Under a determination of place of contract, there are several problems

presented among which is the necessity to decide what was the last act necessary to constitute formation of the binding contract and where the act took place.

The Georgia courts in passing upon contracts under former Code § 102-108 formulated several basic principles. As to contracts " 'Obligations in respect to the mode of their solemnization are subject to the rule locus regit actum; in respect to their interpretation, to the lex loci contractus; in respect to the mode of their performance, to the law of the place of their performance. But the lex fori determines when and how such laws, when foreign, are to be adopted, and, in all cases not specified, supplies the applicatory law.' " *Pink v. A.A.A. Highway Express,* 191 Ga. 502, 514 (13 SE2d 337, 137 ALR 934). "It is likewise the settled rule in this State that when a contract is made in one place to be performed in another, the contract, in conformity with the presumed intention of the parties, is to be governed by the law of the place of performance." *Pacolet &c. Co. v. Crescent Textiles,* 219 Ga. 268, 270 (133 SE2d 96). Code § 102-108 as amended by the Act creating the Georgia Uniform Commercial Code (Ga. L. 1962, pp. 156, 427; Ga. L. 1963, pp. 188, 205) now reads: "When writings or contracts are intended to have effect in this State, they must be executed in conformity to the laws of this State, excepting wills of personalty or person domiciled in another State or Country."

Just what effect this changed language has on contracts not covered by the Uniform Commercial Code has not been determined. Nevertheless, the law in its present state does not limit the application of the Georgia Securities Act. Thus, whether a sale within the meaning of the Georgia Securities Act occurred in Georgia must be decided on basic principles.

The defendant urges that there were various contacts with Florida and that law should apply and not the Georgia law. Nevertheless, several pertinent facts sway us to the contrary opinion, regardless of what particular legal theory might be applicable. Although one of the defendants testified that the plaintiff agreed to lend $50,000 in Florida, the agreement which concerns the debenture, or security here, sets forth it was entered into in Atlanta, Georgia. Furthermore, the plaintiff, who resided in Georgia, executed the contract in Georgia and received the stock in Georgia. We therefore find there was a sale in Georgia. That being true, the Georgia blue sky law is applicable and since there was a failure to comply with its requirements the plaintiff is entitled to treat the sale as voidable.

2. The defendants urge that summary judgment should not be granted since there were facts tending to show that the plaintiff waived or was estopped to rely upon the blue sky laws of Georgia. There is no basis for waiver or estoppel in a situation of this sort except where there has been gross misconduct on the part of the plaintiff or fraud such as would bar him from recovery. See cases cited in Blue Sky Law, Loss & Cowett, p. 167 et seq. The purpose of the blue sky laws is to allow the plaintiff to rescind where the securities offered were not issued in compliance with the law in question. See in this connection *Boddy v. Theiling,* 129 Ga. App. 273. Here the facts show clearly the absence of any fraud or chicanery on the plaintiff's part and instead merely reveal that the plaintiff purchased the securities and then elected to rescind as he had every right to do under the statute. Summary judgment was proper in this case and the trial judge erred in denying the plaintiff's motion.

*Judgment reversed. Bell, C. J., and Deen, J., concur.*

ON MOTION FOR REHEARING

On motion for rehearing it is urged: (1) that under the escrow agreement the escrow agent was appellant's agent and the receipt of the security by such agent in Florida was receipt by the plaintiff; (2) that the escrow agreement was not the sale of the security but was only auxiliary to an already completed contract; (3) that although Code § 102-108 has been materially amended, the conflict of laws rule as to contracts is still preserved by case law; (4) that Code Ann. § 109A-8—106 (Ga. L. 1962, pp. 156, 358; 1964, pp. 70, 71) is controlling.

Code Ann. § 109A-8—106 provides: "The validity of a security and the rights and duties of the issuer with respect to registration of transfer are governed by the law (including the conflict of laws rules) of the jurisdiction of organization of the issuer."

1. In speaking of the escrow agent, movants state his duties were to: "receive the security in Florida from the Florida corporation on behalf of the appellant." However, paragraph 3 (c) states: ". . . Agent shall: . . . Deliver to Allen the following security. . ." Hence, the contract was not fully performed until the plaintiff received the securities in Georgia. It should be reiterated that the question here is not limited to the location of the contractual situs but concerns whether the sale within the meaning of the Georgia Securities Act took place in Georgia or Florida. We hold that under the Georgia Securities Acts (Code Ann. Ch. 97-1; Ga. L. 1957, p. 134) the "sale" took place in Georgia.

2. There may have been a previous "contract" to lend money entered into in Florida, but there was no contract for the "sale" of securities entered into at that time or place. Moreover, as pointed out above, we look at the contract only in endeavoring to determine where the sale took place.

3. The general rule with regard to contracts has been repealed. Our courts may still apply the essence of that rule in other situations. See *Goodman v. Nadler,* 113 Ga. App. 493, 495 (148 SE2d 480). But there is no law holding that such rule or rules is now applicable to our Georgia Securities Act.

4. Code Ann. § 109A-8—106 utilizes the terms "validity of a security" not validity of a sale of a security. Whether the *security* is valid or invalid has nothing to do with whether such *sale* is valid or invalid under the Georgia Securities Act.