NATIONAL HILLS SHOPPING CENTER, INC., Plaintiff-Appellant,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellee.

No. 75–2772.

United States Court of Appeals, Fifth Circuit.

May 2, 1977.

Rehearing and Rehearing En Banc Denied June 22, 1977.

George H. Connell, Jr., Atlanta, Ga., for plaintiff-appellant.

Ben Kingree, Atlanta, Ga., for defendant-appellee.

Appeal from the United States District Court for the Northern District of Georgia.

Before GOLDBERG and HILL, Circuit Judges, and KERR,* District Judge.

JAMES C. HILL, Circuit Judge.

This is an appeal by National Hills Shopping Center, Inc. ("National Hills") and its insurer, Insurance Company of North America ("INA") from a summary judgment granted by the district court in favor of appellee, Liberty Mutual Insurance Company ("Liberty Mutual"). We affirm.

The facts are not in dispute. National Hills is a corporation whose business is the operation, maintenance and leasing of certain improved real estate known as National Hills Shopping Center, in Augusta, Georgia. National Hills White Store, Inc. ("White Store") leases from National Hills one of the stores in the shopping center, for use in its business, which is the operation of a department store. On July 9, 1968, a roof of the shopping center above the leased store premises collapsed, resulting in damage to the goods of White Store. The resulting damage claim, after suit in state court, was satisfied by National Hills and its insurer, INA.

---

* Senior District Judge of the District of Wyoming sitting by designation.

At all material times, White Store was the named insured [1] in a policy of "blanket public liability" insurance issued by Liberty Mutual. In that policy, Liberty Mutual agreed:

> To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law or assumed by him under contract for damages arising out of the business of the named insured stated in the declarations, but only insofar as such damages result from
>
> > (a) injury to or destruction of property accidentally caused . . ..

The policy declarations specified that the "Named Insured's Business Is: Department Stores." The Liberty Mutual policy designating White Store as the "named insured," further provided:

> The unqualified word "insured" wherever used in this policy includes not only the named insured but also . . .
>
> > (b) the owner or lessor . . . of premises rented to or leased to or occupied by the named insured with respect to injury arising out of that part of such premises occupied by the named insured.

Since National Hills was the owner and lessor of the building premises which were leased to and occupied by the named insured (White Store), it claims protection and indemnity from Liberty Mutual as an additional insured under the clause.[2] Thus, appellants National Hills and INA assert that National Hills was entitled to Liberty Mutual's protection with respect to the claims of White Store for the damage done as a result of the roof collapse.

This contention was referred to by the district judge when he observed, "such a construction of that policy would have the anomalous effect of calling upon the defendant (Liberty Mutual) to provide liability coverage to the shopping center (National Hills) for demands made against it by (Liberty Mutual's) named insured."

Liberty Mutual refused to provide coverage to National Hills for this incident, asserting that the loss was not among those protected by the insuring agreement and, further, that, even if it were, such a loss was expressly excluded by other provisions of the policy.

The order of the district court amply analyzes the choice of law issues which might be presented in this case, and will not be restated here. The parties, in brief and oral argument, appear to agree, correctly, that the issues should be resolved by application of Georgia law. *Erie Railway Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■■■ In Georgia, construction of insurance contracts begins with the premise that a policy must "be construed so as to carry out the true intention of the parties. All other rules of contract interpretation and construction are subservient to that principle . . .." *Tennessee Corp. v. Hartford Accident and Indemnity Co.*, 463 F.2d 548, 551 (5th Cir. 1972). Also, the contract must be viewed as a whole and in light of the usual rules of construction of contracts generally. Ga.Code Ann. § 56–2419; *Ranger Insurance Company v. Culberson*, 454 F.2d 857 (5th Cir. 1971), *cert. denied*, 407 U.S. 916, 92 S.Ct. 2440, 32 L.Ed.2d 691; *Parris & Son v. Campbell*, 128 Ga.App. 165, 196 S.E.2d 334 (1973). And, although "words of exclusion in insurance policies should be given small tolerance when insurance companies choose words of imprecision," *Ranger Insurance Company v. Cul-*

---

1. The policy was actually issued to the parent company, naming a number of separate department store operations as named insureds. National Hills White Store is one so named and is the named insured insofar as the issues here are concerned.

2. National Hills had its own insurance coverage for its shopping center operations with Insurance Company of North America ("INA"). INA provided coverage to National Hills and actually paid the damage claim of White Store. Its insured incurred some other independent legal expenses in connection with the White Store suit, but the principal amount of the claim here is asserted by INA as subrogee to White Store's position.

berson, supra, at 864, it is equally axiomatic that:

> While an ambiguous insurance contract will be liberally construed in favor of the insured, one which when construed *reasonably and in its entirety*, unambiguously and lawfully limits the insurer's liability cannot be expanded beyond what is fairly within its plain terms (emphasis in original).

*Ranger Insurance Company v. Columbus-Muscogee Aviation, Inc.,* 130 Ga.App. 742, 745, 204 S.E.2d 474, 476 (1974). *See also Cherokee Credit Life Insurance Co. v. Baker,* 119 Ga.App. 579, 168 S.E.2d 171 (1969); *Fireman's Fund Indemnity Company v. Mosaic Tile Company,* 101 Ga.App. 701, 115 S.E.2d 263 (1960). Consequently, the court has "no intention of stretching for ambiguity when it is not there." *Ranger Insurance Company v. Culberson, supra,* at 860. *See also Shaw v. State Farm Mutual Automobile Insurance Company,* 107 Ga.App. 8, 129 S.E.2d 85 (1962).

We must examine the policy in view of the circumstances of the loss and the foregoing controlling principles of law.

Basically, an insurance contract such as the one involved here defines the risks which the underwriting insurance company agrees to assume and the persons or entities entitled to protection against such defined risks.

The precise definition of risks and insureds may be accomplished in two steps. An insuring clause or perils clause may broadly define the perils to be assumed by the underwriters. If, within the parameters thus set out there are specific perils not to be covered, or particular circumstances under which protection is not to be provided, those refinements are made by exclusion. The district court held that National Hills had not shown that the incident for which it sought coverage was among the insured perils and, applying the then latest expression from the courts of the forum state, further held that, even if the incident gave rise to a claim encompassed by the insured perils, an exclusion applied so as to deny coverage.

*The Property of the Several Insureds.*

At least in passing, it may not be inappropriate to illuminate the issue of exclusion. The protection afforded under the policy extends to more than one entity. The named insured, White Store, is provided protection against the defined risks. So, also, is National Hills as owner and lessor to the named insured.

There is a giveth and a taketh away feature in a policy such as this, ultimately resulting in the expression of the rights of each or all insureds. The insuring agreement defines the perils against which protection is to be afforded. Certain perils which may arise within those parameters are not, however, to be covered. These are expressed in certain exclusions. Pertinent to our labors today is the one in the policy under investigation stating that:

> This Policy does not apply;
>
> (e) to injury to or destruction of (1) property owned or occupied by or rented to the insured, or (2) except with respect to liability under sidetrack agreements covered by this policy, *property used by the insured,* or (3) except with respect to liability under such sidetrack agreements or the use of elevators or escalators at premises owned by, rented to or controlled by the named insured, *property in the care, custody or control of the insured for any purpose in exercising physical control,* or (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises.

By endorsement, it was further provided that:

> It is agreed that such insurance as is afforded by the policy with respect to injury to or destruction of property also applies to injury to or destruction of property of others rented to, leased or occupied by the named insured.
>
> It is further agreed that the insurance afforded by this endorsement shall be excess insurance over any valid and col-

lectible direct loss *insurance issued to the named insured* and covering the property injured or destroyed.

It is further agreed that Exclusion (e) is amended accordingly. (emphasis supplied).

The damage forming the basis for the claim against National Hills was, clearly, to property "in the care, custody and control of" the *named* insured, White Store. However, it was not so situated with respect to National Hills, the "additional insured" who is claiming coverage. Liberty Mutual argues that, White Store obviously being an "insured," no covered claim can arise out of or result from damage to its property. Its position is that the exclusion applies as if it were written to exclude claims resulting from damage to property "in the care, custody or control of (any) insured." National Hills asserts that the intent of the parties to the contract is that, where there are, as here, several who qualify as insureds, they must be treated severally and not collectively to the end that coverage will be excluded with respect to property in the care, custody and control of the insured seeking protection under the policy, but not with respect to property thus situated *vis-à-vis* strangers to the claim even though, under other circumstances, they might have been insureds.

National Hills buttresses this assertion by calling attention to the fact that a clause entitled "Severability of Interest" in the policy provides:

> The term "the insured" is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

Relying on this clause, National Hills contends that the exclusion as to property in the care, custody and control of the insured would not exclude its claim from coverage since the damaged property was in the custody of the White Store. Although this interpretation would permit National Hills to recover in this case, it would not always inure to the benefit of an additional insured. Applying the exclusion severally, National Hills would be unable to recover, for example, on a claim for damage to property in its own care, custody or control.

Commentators indicate that "severability of interest" clauses were inserted in standard forms for various liability policies in the mid-1950's and were intended to resolve the issue as contended by National Hills. At least two authors closely related to the insurance industry, with, as it turns out, unjustified optimism, announced that intention and stated that the severability of interest clause would dispel all confusion to the contrary.[3]

Yet it was not to be. The law of the forum state, Georgia, has been interpreted and defined on several occasions, but its

---

**3.** Plummer, Automobile Policy Exclusions, 13 Vand.L.Rev. 945, 955 (1960):

> Considerable confusion developed in the courts before the insertion of the severability condition in the automobile liability policy. In standard form policies the condition reads as follows: "The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability." *The new condition in the policy has made it clear and certain that the named insured and the omnibus or additional insureds are to be treated separately, and that the exclusions or other coverage tests should apply to the particular insureds seeking coverage.* (emphasis supplied).

Breen, *The New Automobile Policy*, 328 Insurance L.J., May, 1955:

> Severability of insureds.—It has always been the intent of the policy that it apply separately and individually to each insured, including the omnibus insureds . . . and the named insured. It was thought that there was little doubt of this, but recent court decisions have held contrary to this intent. In order to clarify the policy, a "severability of insureds" condition has been added. . .
>
> The case came up when Jameson, a contractor, loaned his car to Lewis, a subcontractor. Lewis was backing the borrowed car down a driveway and struck an employee of Jameson. The court held that since the policy did not protect Jameson because it excluded injuries to his employees, it would not cover Lewis for claims made by those same persons, even though they were not his employees. *The new provision will prevent any such decision as that in the future.* (emphasis supplied).

definition leaves much to be desired. We first note the case of *Float-Away Door Co. v. Continental Casualty Co.,* 372 F.2d 701 (5th Cir. 1966). There, our court was put to the task of predicting, under *Erie,*[4] the result which would be reached when the issue was presented to the highest court in Georgia.[5] We there held:

> The better reasoned cases adopt a restrictive interpretation of "the insured" as referring only to the party seeking coverage under the policy. See discussion in *Maryland Casualty Co. v. American Fidelity & Cas. Co.,* E.D.Tenn.1963, 217 F.Supp. 688. The primary objective of such exclusionary clauses is to avoid duplication of coverage with respect to compensation insurance. With that purpose in mind, there seems to be no reason why an insured should not be indemnified against the claim of an employee outside of that insured's employment. *Id.* at 708 (footnote omitted).

The holding thus predicted has not yet come to pass. Indeed, within six months, the Court of Appeals of Georgia decided *Nationwide Mutual Insurance Company v. Peek,* 115 Ga.App. 678, 155 S.E.2d 661 (1967). While the facts in *Peek* were noticeably different from *Float-Away, supra,* the result indicated strongly that the Georgia courts disagreed with our interpretation. Under the peculiar facts of the *Peek* case (both trucks in the care, custody and control of the named insured; each truck owned by owners qualifying as additional insureds; one owner claiming for damage to his truck against the other owner) the Georgia court held:

> The question presented as to the effect of the exact provisions of the policy is one of first impression in this state. There is a

split of authority in other jurisdictions, with able decisions supporting different views. See Ann. 50 A.L.R.2d 78, 99. However, the weight of authority is that the intent of the parties was to exclude from coverage property owned by the named or additional insureds. The "severability of interest clause" does not modify the exclusion clause to mean only the person claiming coverage.

The district court found that, under *Erie,* the federal court was bound to abandon our result in *Float-Away* and attorn to the substantive law of construction announced in *Peek,* and there the matter lay until now.

In the ample time since the district court's carefully considered opinion and the determination of this appeal, however, further developments have taken place in the forum state. On September 23, 1975, the Court of Appeals of Georgia handed down its decision in *Davis v. National Indemnity Company,* 135 Ga.App. 793, 219 S.E.2d 32 (1975). Citing and quoting the words we have quoted from Plummer and Breen,[6] the court determined that an exclusion must be read to apply to the party claiming coverage, as we had held in *Float-Away* and as contended for here by National Hills.[7]

Thus, on this issue, the district court's reliance upon *Peek,* then required, has been eroded by *Davis,* and a federal court now seeking the Georgia rule is given the same task as confronted us in *Float-Away,* seven years ago. If we are required to predict the ultimate outcome of this ongoing struggle in Georgia, we could hardly avoid following the latest, *Davis,* case as expressing what we conceived in *Float-Away* as the rule of the "better reasoned cases" and resolve the issue contrary to the result reached by the trial court. If such a task is

---

**4.** *Erie Railway Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**5.** *Float-Away* involved named and additional insureds and the Severability of Interest Clause in a situation involving bodily injury to an employee of one insured resulting from negligence of another insured seeking protection. An exclusion eliminated coverage with respect to the claims of an employee of the insured. The interpretation of the Severability of Inter-

est Clause in such a case should apply, also, in a case of damage to property of one insured by another insured vis-à-vis an exclusion as to property in the care, custody and control of "the insured."

**6.** *See* n.3.

**7.** *Cf. Lauer v. Bodner,* 137 Ga.App. 851, 225 S.E.2d 69 (1976).

not required, then all we have said may be taken as an indication of how greatly constructive federalism would be furthered if Georgia were to adopt a rule permitting us to certify important questions of state law to the highest court of that state for our guidance, for we seek Georgia law from Georgia authorities.[8]

Let us see if this issue must be decided by us without such guidance.

### The Covered Perils.

█ Insofar as pertinent here, the risk assumed by the insurer was that of liability to others for damages resulting from accidental injury to or destruction of property.

Liberty Mutual, however, did not assume all liabilities for property damage which might befall any person or entity qualifying as an "insured." In order to come within the policy's coverage, the liability must be shown to have resulted from damages arising out of the business of the *named* insured. While a number of persons or entities might qualify for protection—that is, might be "insureds"—they must be faced with liability for damages arising out of the operation of White Store's business if they are to be entitled to coverage. No ambiguity appears here. Any other construction would mean that a liability policy written on a department store would cover liabilities incurred in the conduct of any sort of business enterprise engaged in by any additional insured.

In the case *sub judice,* we observe the conduct of two business operations. White Store was in the business of operating a department store. National Hills' business was that of owning, operating, maintaining and leasing a shopping center. The liability of National Hills, for which it seeks coverage, resulted from damage to the property of White Store as a direct result of the collapse of the roof of the shopping center.

As indicated above, Liberty Mutual took upon itself the risk of liability arising out of the business of White Store, the *named* insured, whose business is declared to be "Department Stores."[9] The fact that the damaged property was the property of the named insured neither expands nor contracts the risk assumed—the perils insured against.

The liability of National Hills arose out of the business of National Hills, not out of the business of the named insured in the Liberty Mutual policy. Thus, the collapse of the shopping center roof was not a peril insured against by Liberty Mutual in this policy. In reaching this conclusion, we have considered the thoughtful opinion in *Aetna Casualty & Surety Co. v. Ocean Accident & Guarantee Corp.,* 386 F.2d 413 (3d Cir. 1967). We conclude that that case stands for the proposition that peculiar facts may make ambiguous provisions in contracts which are otherwise clear. In the case before us, there is no ambiguity. Liberty Mutual insured a department store, not the operation of a shopping center.

We, therefore, pretermit the Severability of Interest Clause issue and, for the reasons stated herein, the judgment of the District Court is

AFFIRMED.

---

8. After the court reached the decision herein, but before its publication, the Governor of Georgia signed into law House Bill No. 166, which will, after July 1, 1977, permit this court to certify a question to the Georgia Supreme Court if ". . . there are no clear controlling precedents of the Supreme Court of [Geor-

gia]." We are gratified that this step has been taken.

9. Obviously, insurance coverage is available to cover risks arising out of the business operations of National Hills. INA provided it.