RYDER TRUCK RENTAL, INC.

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY.

Civ. A. No. C81–870A.

United States District Court,
N. D. Georgia,
Atlanta Division.

May 17, 1982.

J. Robert Persons, James H. Cox, Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., for plaintiffs.

H. Andrew Owen, Perry A. Phillips, McCauley, Owen & Sweeney, Atlanta, Ga., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

Plaintiff (hereinafter "Ryder") brings this suit for a declaratory judgment to determine that it is entitled to defense and indemnity under a liability insurance contract issued by St. Paul Fire & Marine Insurance Co. (hereinafter "St. Paul") to Franchise Services, Inc. (hereinafter "Franchise Services"). The action is presently before the court on cross-motions for summary judgment, Rule 56, Fed.R.Civ.P. The relevant facts are undisputed and will be briefly summarized.

On January 1, 1976, Ryder entered into an agreement to lease vehicles which were domiciled and maintained in Jonesboro, Georgia to Franchise Services. On March 31, 1977, St. Paul, a Minnesota corporation, issued Policy No. 699NA5400 to Franchise Services, a Kansas corporation, for a term of three years. The policy was negotiated through an insurance agency located in, and was delivered to Franchise Services in, Wichita, Kansas. As an indorsement to the policy, St. Paul also issued a "Certificate of Insurance" to Ryder, a Florida corporation, whereby Ryder was designated as an additional insured pursuant to the terms of the policy. The certificate was delivered to Ryder in Miami, Florida.

On August 17, 1979, William V. McCracken, an employee of Franchise Services, was injured in Tennessee while driving a Ryder truck which had been leased to Franchise Services. At the time of the collision, McCracken was acting within the course of his employment with Franchise Services. Subsequently, McCracken sued Ryder in the Superior Court of Clayton County, Georgia, alleging that Ryder's negligence proximately caused his personal injuries. Ryder tendered the defense of the case to St. Paul which denied coverage on the ground that the policy excluded claims based on bodily injury of an employee of an insured arising out of and in the course of his employment by the insured.[1]

1. The policy issued to Franchise Services contains the following provisions:

> 2. COVERAGES
> A. The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of ... [b]odily injury ... to which this Insuring Agreement applies, caused by an occurrence arising out of the ownership, maintenance, or use, including loading and unloading, of any automobile, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage ....
> 3. EXCLUSIONS
> THIS INSURING AGREEMENT DOES NOT APPLY:
> C. To bodily injury to any employee of the Insured arising out of and in the course of his employment by the Insured or to any obliga-

tion of the Insured to indemnify another because of damages arising out of such injury; but the exclusions [*sic*] does not apply to any such injury arising out of and in the course of domestic employment by the Insured unless benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law.

In addition, Section II, Basic Definitions, contains a severability of interests clause:

> When used in this policy ...
> "Insured" means any person or organization qualifying as an Insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability.

St. Paul seeks summary judgment in its behalf, arguing that, under both Georgia and Kansas law, the exclusionary clause contained in the insurance policy excludes coverage for McCracken's injuries. Thus, St. Paul contends, since Franchise Services is an "insured" under the policy, and the policy excludes liability for injuries incurred by an insured's employees, Ryder is not entitled to defense and indemnity. On the other hand, Ryder asserts that the exclusion provision does not operate to preclude coverage for Ryder as an additional insured for claims raised against Ryder by an employee of the named insured, Franchise Services.

At the outset, the court must determine whether Kansas, Georgia, or Florida law governs the construction of the insurance policy at issue. The conflict of laws rules to be applied by the federal district court in a diversity case must conform to those prevailing in the courts of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Georgia, there are two alternative rules which may be applied in this case: *lex loci contractus* or center of gravity.[2] Plaintiff argues that the traditional rule of *lex loci contractus* should control. *See Canal Insurance Co. v. Aldrich*, 489 F.Supp. 157 (S.D. Ga.1980); *Avemco Insurance Co. v. Rollins*, 380 F.Supp. 869 (N.D.Ga.), aff'd, 500 F.2d 1182 (5th Cir. 1974). Under that rule, the plaintiff insists, Florida law applies, since St. Paul delivered the "certificate of insurance" by mail to Ryder in Miami, Florida.

However, in *Eldon Industries, Inc. v. Paradies & Co.*, 397 F.Supp. 535 (N.D.Ga.1975) (Freeman, J.), this court observed:

[A] recent Georgia case specifically held that "[t]he general [conflicts] rule [expressed by prior statute and case law] with regard to contracts has been repealed." *Allen v. Smith & Medford, Inc.*, 129 Ga.App. 538, 544, 199 S.E.2d 876 (1973) (on rehearing). Although the *Allen* case left open the question of which

conflicts rule might govern actions not involving Georgia securities laws, *id.* at 542, 544, 199 S.E.2d 876, 881, the strong implication in that case is that the Georgia courts will now generally adhere to the "grouping of contracts" theories expressed in the Restatement (Second) of Conflicts § 188 (1971). This approach, also called the "center of gravity" approach, has in effect been adopted in actions controlled by the provisions of the Uniform Commercial Code, *see* Ga.Code Ann. § 109A–1–105; Annot., 63 A.L.R.3d 341 (1975), and has also been approved by this court. *See Ray v. National Inventory Control Systems, Inc.*, Civil Action No. 18630 (N.D.Ga. Feb. 20, 1975).

397 F.Supp. at 538. *See United American Bank v. Gunter*, 620 F.2d 1108, 1119 (5th Cir. 1980); *Crompton-Richmond Co. v. Briggs*, 560 F.2d 1195, 1199 n.6 (5th Cir. 1977). Although *Eldon* involved the construction of a contract for the sale of goods, Judge Moye in *Brown v. Inter-Ocean Insurance Co.*, 438 F.Supp. 951 (N.D.Ga.1977), relied on *Eldon* in applying the center of gravity approach to determine which law governed the construction of a life insurance contract. Nevertheless, plaintiff submits that the center of gravity approach does not apply to insurance contracts. Reply Brief of Plaintiff to Defendant's Supplemental Brief, filed February 17, 1982, at 4. Plaintiff neither cites authority nor presents any compelling arguments in support of this proposition. Thus, in light of authority to the contrary, the appropriate question is whether pursuant to the center of gravity approach, Georgia, Kansas, or Florida law should govern the construction of this policy.

The Restatement (Second) of Conflicts § 188(2) (1971) enumerates five factors that should be considered in applying the center of gravity approach: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the

2. Georgia courts have not explicitly addressed the question whether the grouping of contacts approach should be followed in determining

which law governs the construction of contracts.

contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. While admittedly this case presents a close question, the court concludes that Georgia, not Florida, law applies. The lease agreement entered into by Ryder and Franchise Services concerned vehicles domiciled in Georgia and stated that Franchise Services was to provide liability insurance for these vehicles. It is unclear from the record, however, where this agreement was negotiated, executed, and delivered. The cause of action in the present case arose in Georgia. Although the "certificate of insurance" was delivered to Ryder in Miami, Florida, there is no evidence indicating that Ryder dealt directly from its home office with St. Paul or that the State of Florida has any other connection with this lawsuit. In the absence of such evidence, the court declines to apply Florida law.

 The precise issue raised in the present case is whether, under Georgia law, the employee exclusion provision in the insurance policy operates to preclude coverage for Ryder as an additional insured for claims asserted against Ryder by an employee of the named insured. In Georgia, construction of insurance contracts begins with the premise that a policy must "be construed so as to carry out the true intentions of the parties. All other rules of contract interpretation and construction are subservient to that principle. . . ." *National Hills Shopping Center, Inc. v. Liberty Mutual Insurance Co.*, 551 F.2d 655, 657 (5th Cir. 1977) (hereinafter "National Hills"), *quoting Tennessee Corp. v. Hartford Accident & Indemnity Co.*, 463 F.2d 548, 551 (5th Cir. 1972). The intention of the parties is to be discerned from the contract as a whole. Ga.Code Ann. § 56–2419; *National Hills*, 551 F.2d at 657; *Ranger Insurance Co. v. Culberson*, 454 F.2d 857 (5th Cir. 1971), *cert. denied*, 407 U.S. 916, 92 S.Ct. 2440, 32 L.Ed.2d 691 (1972). It is well

settled that if an insurance policy is ambiguous, it will be liberally construed in favor of the insured. If, however, when "construed *reasonably and in its entirety*, [a policy] unambiguously and lawfully limits the insurer's liability [it] cannot be expanded beyond what is fairly within its plain terms." *Ranger Insurance Co. v. Columbus-Muscogee Aviation, Inc.*, 130 Ga.App. 742, 745, 204 S.E.2d 474, 476 (1974) (emphasis in original). Finally, words of exclusion will be given "small tolerance when insurance companies choose words of imprecision." *National Hills*, 551 F.2d at 657. With these precepts in mind, the court turns to examine the circumstances surrounding the present dispute.

 The policy issued to Franchise Services contains three provisions pertinent to the present dispute: a coverage provision, an exclusion provision, and a severability of interests clause. It is undisputed that Ryder is an additional insured and that, but for the exclusion provision, McCracken's claim would be covered. With respect to the exclusion provision, St. Paul contends that since McCracken's employer is an insured and liability does not extend to employees of an insured, coverage is excluded for all insureds under the policy when the injured person is an employee of any insured. In response, Ryder argues that the severability of interests clause requires St. Paul to treat each insured independently from any other insured. Accordingly, Ryder asserts, "the insured" refers only to the party seeking coverage under the policy, thus excluding coverage only when the injured claimant is the employee of the party seeking coverage.

There exists a conflict among courts concerning the interplay between the employee exclusion clause of a liability policy, the omnibus clause, and the severability of interests clause.[3] In tracing the development

---

3. *Compare Caribou Four Corners, Inc. v. Truck Insurance Exchange*, 443 F.2d 796 (10th Cir. 1971); *North River Insurance Co. v. Connecticut Fire Insurance Co.*, 233 F.Supp. 31 (W.D. Va.), *aff'd*, 341 F.2d 913 (4th Cir. 1965); *Gulf Insurance Co. v. Mack Warehouse Corp.*, 212 F.Supp. 39 (E.D.Pa.1962); *Bituminous Casualty Corp. v. Aetna Life & Casualty Co.*, 599 S.W.2d 516 (Mo.App.1980); *Marwell Construction, Inc. v. Underwriters of Lloyd's London*, 465 P.2d

of the law in Georgia, the court notes first the case of *Float-Away Door Co. v. Continental Casualty Co.*, 372 F.2d 701 (5th Cir. 1966), *cert. denied*, 389 U.S. 823, 88 S.Ct. 58, 19 L.Ed.2d 76 (1969) (hereinafter *"Float-Away"*). There, the injured party was an employee of an additional insured who sought to recover from another insured.[4] The policy contained an exclusion eliminating coverage with respect to the claims of an employee of the insured. The insurance company took the position that the term "insured" referred to any insured under the policy, and thus excluded coverage with regard to all insureds when the injured person was the employee of any insured. Faced with this contention, the *Float-Away* court held:

> The better reasoned cases adopt a restrictive interpretation of "the insured" as

referring only to the party seeking coverage under the policy. See discussion in *Maryland Casualty Co. v. American Fidelity & Casualty Co.*, E.D.Tenn.1963, 217 F.Supp. 688. The primary objective of such exclusionary clauses is to avoid duplication of coverage with respect to compensation insurance. With that purpose in mind, there seems to be no reason why an insured should not be indemnified against the claim of an employee outside of that insured's employment.

372 F.2d at 708 (footnote omitted).

Six months after *Float-Away* was handed down, the Court of Appeals of Georgia decided *Nationwide Mutual Insurance Co. v. Peek*, 115 Ga.App. 678, 155 S.E.2d 661 (1967). While the facts in *Peek* were noticeably different from *Float-Away*[5] the

298 (Alaska 1970); *Commercial Standard Insurance Co. v. American General Insurance Co.*, 455 S.W.2d 714 (Tex.1970); *Shelby Mutual Insurance Co. v. Schuitema*, 193 So.2d 435 (Fla. 1967); *Liberty Mutual Insurance Co. v. Iowa National Mutual Insurance Co.*, 186 Neb. 115, 181 N.W.2d 247 (1970); *with Kelly v. State Automobile Insurance Association*, 288 F.2d 734 (6th Cir. 1961); *Chrysler Corp. v. Insurance Co. of North America*, 328 F.Supp. 445 (E.D.Mich.1971); *Maryland Casualty Co. v. Fidelity & Casualty Co.*, 313 F.Supp. 560 (W.D. Mo.1970); *St. Paul Fire & Marine Insurance Co. v. Wabash Fire & Casualty Insurance Co.*, 264 F.Supp. 637 (D.Minn.1967); *Benton v. Canal Insurance Co.*, 241 Miss. 493, 130 So.2d 840 (1961).

4. Summarizing the facts in *Float-Away*, the Fifth Circuit stated:

> Dance had contracted with Float-Away to transport a shipment of doors from Float-Away's plant in Atlanta, Georgia, to Universal Manufacturing Company (Universal) in Ohio. Dance left one of its trailers at Float-Away's plant where it was loaded by Float-Away, picked up by Dance and inspected and sealed at Dance's Atlanta terminal, and transported to Cincinnati, Ohio. In Cincinnati, Dance turned the trailer over to another carrier which transported it to the premises of Universal in Camden, Ohio. There, in the course of the unloading operation, Barrett, an employee of Universal, was injured when some of the doors fell from the trailer. Barrett filed suit against Float-Away and Dance, alleging that both parties had been negligent in the loading and inspection of the trailer. Float-Away and Dance then called upon Continental to defend them in that suit, claiming

that both were covered under Continental's policy. Continental acknowledged that its policy covered Dance, but refused to defend Float-Away, denying that Float-Away was an additional insured within contemplation of the omnibus clause in Continental's policy. Thereupon, Float-Away and National Surety filed this suit for a declaratory judgment that Barrett's claim against Float-Away came within the coverage of Continental's policy. Both parties moved for summary judgment. The district court sustained Continental's motion for summary judgment, ruling that Float-Away was not an additional insured under the policy which Continental had issued to Dance. Several months later, Barrett's personal injury action went to trial with Float-Away being defended by National Surety and Dance being defended by Continental. After a full day's trial the action was compromised on the basis of a consent judgment for $175,000.00. Continental has paid into court $87,500.00 on behalf of Dance. This appeal involves only the remaining $87,-500.00 which National Surety claims that it does not owe on behalf of Float-Away.

372 F.2d at 703.

5. In *Peek*, Nationwide Mutual Insurance Company filed an action for declaratory judgment against Don Peek and Alton Wilson. The complaint alleged: (1) that each of the defendants owned a tractor-trailer truck "under lease to and in the service of Watkins Motor Lines, Inc."; (2) that the two vehicles were involved in a collision in which Peek's truck was damages; and, (3) that Peek instituted suit against Wilson to recover for the damages to his truck. Nationwide Mutual Insurance Company's chief contention was that it had no obligation to

result indicated strongly that the Georgia courts disagreed with the Fifth Circuit's ruling in *Float-Away*. In *Peek*, the Georgia court, relying on a Texas case, *Transport Insurance Co. v. Standard Oil Co. of Texas*, 161 Tex. 93, 337 S.W.2d 284 (1960), held:

> The question presented as to the effect of the exact provisions of the policy is one of first impression in this state. There is a split of authority in other jurisdictions, with able decisions supporting different views.... However, the weight of authority is that the intent of the parties was to exclude from coverage property owned by the named or additional insureds. The "severability of interest clause" does not modify the exclusion clause to mean only the person claiming coverage. *Transport Ins. Co. v. Standard Oil Co. of Texas*, 161 Tex. 93, 337 S.W.2d 284, and cases cited therein.

However, the case upon which *Peek* placed principal reliance, *Transport Insurance Co.*, was subsequently overruled by the Texas Supreme Court on the ground that it "failed to give proper emphasis to the severability of interests clause." *Commercial Standard Insurance Co. v. American General Insurance Co.*, 455 S.W.2d 714, 719 (Tex. 1970).

Moreover, in 1975, the Court of Appeals of Georgia decided *Davis v. National Indemnity Co.*, 135 Ga.App. 793, 219 S.E.2d 32 (1975), a significant case involving the interplay between exclusion provisions and severability of interest clauses. In *Davis*, the mother of an additional insured under an automobile liability insurance policy was injured while riding as a passenger in an automobile being driven by her daughter. The policy excluded liability for injury to the parent, son, or daughter of the insured and contained a severability of interests clause. Nevertheless, due to the presence of this clause, the court ruled that the exclusion should be read to apply only to the party claiming coverage. Further, the court continued:

> defend Wilson because the indemnity against Wilson's liability for the property damage to Peek's truck was excluded by a provision of the

> "Considerable confusion developed in the courts before the insertion of the severability condition in the automobile liability policy. In standard form policies, the condition reads as follows: 'The term "the insured" is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.' This new condition in the policy has made it clear and certain that the named insured and the omnibus or additional insureds are to be treated separately, and that the exclusions or other coverage tests should apply to the particular insureds seeking coverage." Plummer, Automobile Policy Exclusions, 13 Vand.L.Rev. 945, 955 (Oct., 1960).

> "It has always been the intent of the policy that it apply separately and individually to each insured, including the omnibus insureds (or Insuring Agreement III) and the named insured. It was thought that there was little doubt of this, but recent court decisions have held contrary to this intent. In order to clarify the policy, a 'severability of interests' condition has been added." Breen, The New Automobile Policy, 388 Insurance L.J., May 1955. *See also, Shelby Mutual Ins. Co. v. Schuitema*, 183 So.2d 571 (Fla. Dist.Co. of Appeal) and cases cited.

135 Ga.App. at 795–96, 219 S.E.2d at 34.

Upon reviewing the holding of *Davis*, the Fifth Circuit in *National Hills* observed that were the court required to apply the law of Georgia to the facts before it, it would follow *Davis* as expressing the rule of the "better reasoned cases." *National Hills*, 551 F.2d at 660. However, because the plaintiff's claim in *National Hills* did not involve a peril insured against by the defendant, the Fifth Circuit affirmed the district court's grant of summary judgment in favor of the defendant insurer. Thus, the court was able to avoid the difficult question presently facing this court.

liability policy issued by Nationwide Mutual Insurance Company to Watkins Motor Lines, Inc.

St. Paul contends that the present question was definitively resolved by the Georgia Court of Appeals in *Fireman's Fund Indemnity Co. v. Mosaic Tile Co.*, 101 Ga. App. 701, 115 S.E.2d 263 (1960). The court disagrees.[6] In *Mosaic Tile*, an employee of Gate City Tile Company (hereinafter "Gate City") sustained injuries as a result of an accident which arose out of and in the course of his employment by Gate City. Apparently, he was injured while employees of the Mosaic Tile Company (hereinafter "Mosaic Tile") were loading tile on Gate City's truck. He sued Mosaic Tile, which was an additional insured under Gate City's liability policy. Mosaic Tile tendered the defense to Gate City's insurer which declined to defend on the basis that an exclusion provision of the policy excluded coverage where the injury was incurred by an employee of the insured. The court of appeals held that the exclusion provision unambiguously precluded coverage, and that Mosaic Tile was not entitled to defense by Gate City's insurer. However, there is no indication in the court of appeals opinion that Gate City's policy, unlike the present policy, contained a severability of interests clause. For this reason, *Mosaic Tile* is distinguishable.

After carefully examining the policy issued to Franchise Services by St. Paul *in its entirety*, the court finds the exclusion provision to be ambiguous. Indeed, given the great number of cases and commentary that this same language has generated over the years, St. Paul's contention that the exclusionary language is not vague, and

therefore does not warrant judicial construction, is unpersuasive. Construing the provision on its own, the term "the insured" can be read to refer to any insured under the policy, thus excluding coverage with regard to all insureds under the policy when the injured person is an employee of any insured. On the other hand, when read in light of the severability of interests clause, "the insured" can be interpreted to refer only to the party seeking coverage under the policy, excluding coverage only when the injured claimant is the employee of the party seeking coverage, or when the party seeking coverage has workmen's compensation liability to the injured employee. Faced with this ambiguity, the court believes that the policy should be liberally construed in favor of the insured.[7] Thus, under the rule of the "better reasoned cases" "the insured" refers only to the party seeking coverage under the policy. As the Fifth Circuit stated in *Float-Away*: "The primary objective of such exclusionary clauses is to avoid duplication of coverage with respect to compensation insurance. With that purpose in mind, there seems to be no reason why an insured should not be indemnified against the claim of an employee outside of that insured's employment." 372 F.2d at 708.

Moreover, in the court's view, this conclusion is compelled by the fact that the policy at issue here contains a severability of interests clause. Commentators indicate that severability of interest clauses were inserted in standard forms for various liability policies in the mid-1950s in order to make

---

6. Although the Fifth Circuit in *Float-Away*, on petition for rehearing, also found *Mosaic Tile* not to be controlling, this court does not distinguish *Mosaic Tile* on the same basis. The Fifth Circuit found it significant that the injured party in Float-Away was an employee of a third party and not of the named insured. Commenting on the effect of *Mosaic Tile*, the court stated: "We are not convinced that the definition which would apparently exclude coverage when the employee of a named insured is injured also denies coverage if an employee of Universal, a different omnibus insured, is involved." 372 F.2d at 710. However, in this court's view, the Fifth Circuit's comment does not mandate a ruling that Ryder is not entitled to defense by St. Paul since the present case is

distinguishable from *Mosaic Tile* on other grounds.

7. St. Paul contends that this principle is inapplicable to the case at bar because apparently the "Certificate of Insurance" issued to Ryder was not drafted by St. Paul. However, St. Paul did draft the insurance policy issued to Franchise Services, including the exclusion provision. Moreover, the court is mindful "of the desireability, as a matter of public policy, to protect the injured party in such a manner so that those who are injured are not abandoned without compensation." *Float-Away*, 372 F.2d at 705.

"it clear and certain that the named insured and the omnibus or additional insureds are to be treated separately, and that the exclusions or other coverage tests should apply to the particular insureds seeking coverage." Plummer, Automobile Policy Exclusions, 13 Vand.L.Rev. 945, 955 (1960), *quoted with approval in National Hills*, 551 F.2d at 659 n.3; *Davis v. National Indemnity Co.*, 135 Ga.App. at 795, 219 S.E.2d at 34. *Accord*, Risford & Austen, Who Is "the Insured" Revisited?, 28 Ins. Counsel J. 100 (1961).

In the present case, the court must assume that the severability of interest clause was inserted into the standard policy for some purpose. *See Willingham v. Life & Casualty Insurance Co. of Tennessee*, 216 F.2d 226 (5th Cir. 1954). It is well recognized that, in construing a policy of insurance, the intention of the parties is to be collected, not from the detached parts of the instrument, but from the whole of it. *Mutual Life Insurance Co. v. Durden*, 9 Ga.App. 797, 802, 79 S.E. 295 (1910). On its face, the clause is plain and unambiguous. It states:

> The term "the insured" means any person or organization qualifying as an Insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each Insured against whom claim is made or suit is brought except with respect to the limits of the Company's liability . . . .

This language clearly provides that "the insured" refers to each insured as a separate and distinct entity apart from any other entity entitled to coverage thereunder. When a claim is brought against one who is "the insured" under the policy, the latter is "the insured" for the purpose of determining the company's obligations with respect to such claim. The only limitation in this clause is to the effect that inclusion of more than one insured shall not operate to increase the limit of the company's liability. Therefore, under the facts of this case, since McCracken was an employee of Franchise Services and not an employee of the insured claiming coverage, Ryder, the exclusion provision does not preclude coverage for Ryder against McCracken's claims.

Even assuming that the law of Kansas, and not Georgia, governs the construction of the policy, the court would reach the same result. Although St. Paul argues that the Kansas court's decision in *United States Fidelity & Guaranty Co. v. Western Casualty & Surety Co.*, 195 Kan. 603, 408 P.2d 596 (1965), is dispositive, we disagree. In Western Casualty, the supreme court held that an exclusion provision, identical to the one at issue here, operated to preclude coverage for all additional insureds where the claimant was an employee of the named insured. The court reasoned that because the exclusionary language was not ambiguous, there was no need for judicial interpretation. Significantly, however, unlike the policy issued by St. Paul to Franchise Services, the policy in dispute in *Western Casualty* did not contain a severability of interests clause. *See Marwell Construction, Inc. v. Underwriters of Lloyd's London*, 465 P.2d 298 (Alaska 1970).

Apparently, Kansas courts have not had the occasion to address the precise question raised in this case. St. Paul has not cited any relevant Kansas cases, and our research has revealed none. In the absence of controlling authority, the court believes that if the Supreme Court of Kansas were confronted with the question raised here, it would follow the "better reasoned" rule announced in *Float-Away* and adopted by the Georgia Court of Appeals in *Davis*.

In sum, the court concludes that, under both Georgia and Kansas law, Ryder is entitled to defense and indemnity by St. Paul. Accordingly, the plaintiff's motion for summary judgment is GRANTED. The defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.