**GENERAL TELEPHONE COMPANY OF THE SOUTHEAST, Plaintiff-Appellant,**

v.

**J.B. TRIMM, d/b/a Trimm Contracting Company, Defendant-Appellee.**

**No. 82–8440.**

United States Court of Appeals,
Eleventh Circuit.

June 6, 1983.

Warner S. Currie, Sherie Bell Christy, Atlanta, Ga., for plaintiff-appellant.

Robert M. Brinson, Rome, Ga., for defendant-appellee.

Before RONEY and HILL, Circuit Judges, and MORGAN, Senior Circuit Judge.

PER CURIAM:

The appeal in this diversity case concerns whether Georgia continues to adhere to the traditional rule of lex loci contractus in conflicts of law cases or whether Georgia has adopted the Restatement (Second) of Conflicts "center of gravity" system. We hold that if lex loci be the Georgia rule the district court should have applied Georgia contract law. We, nevertheless, certify the question of which system a Georgia court would apply to the Georgia Supreme Court, and, should Georgia law apply, the question of whether Georgia law prohibits enforcement of a contractual indemnity provision between a third party tortfeasor and an employer who has paid workers' compensation benefits to the injured party.

The parties have stipulated to the facts. General Telephone, GTE, a Virginia corporation with its principal place of business in Durham, North Carolina, maintains a list of contractors who have qualified to bid on its construction work. To qualify for this list, a contractor must have signed an initial agreement with GTE setting forth the general terms and conditions of work. GTE submits work order proposals to these approved contractors for bids on individual jobs.

In 1973, Trimm and GTE agreed to an updated version of their original 1968 blanket agreement. Article XII of this contract provides that a contractor will indemnify GTE from all liability and expenses from injury or property damage.[1] In February, 1973, GTE mailed two unexecuted copies of the updated agreement from its North Carolina office to Trimm in Birmingham, Alabama. On March 16, 1973, Trimm executed the two copies of the standard agreement and mailed them to GTE's North Carolina office. GTE then executed the two copies in Durham and mailed one fully executed copy to Trimm in Alabama on March 23, 1973.

From its Moultrie, Georgia office, GTE subsequently notified Trimm that it was accepting bids for construction of an underground system in Dalton, Georgia. Trimm submitted a bid for the project which bid incorporated the provisions of the master agreement. GTE accepted this bid on July 23, 1973 by letter mailed from its Moultrie office to Trimm in Alabama.

On November 12, 1973, Freddie King, Jr., a Trimm employee and resident of Alabama, sustained fatal injuries during construction of the Dalton system. Trimm's insurer subsequently paid to King's widow workers' compensation and funeral benefits under Alabama law. Ms. King then brought a wrongful death suit against Trimm, GTE, and two others. The Alabama circuit court dismissed the action against all defendants except GTE which

---

1. Article XI provided:

   The Contractor [Trimm] agrees to assume liability under the terms of the Workman's Compensation Laws, as amended, of all states in which he performs work under this contract; and further, the Contractor assumes all liability for injury to persons or damage to property of (a) the Contractor, his agents or employees; (b) the Company [GTE], its agents or employees, and (c) any other person or firm arising in any way, directly or indirectly out of the performance of this agreement, whether or not such injury or damage is due to the negligence of the Con-

   tractor, his agents, or employees, excepting only injury or damages arising solely from the negligence of the Company, its agents, or employees. This shall include, without limiting the generality of the foregoing, injuries or damage arising out of the operation of motor vehicles.

   Article XII provided:

   The Contractor agrees to indemnify and save harmless the Company of and from all liability, loss expense, or damage on account of injuries or damage for which the Contractor assumes liability in Article XI, above, including attorney's fees.

settled the suit by consent judgment for $45,000.

■ GTE brought this action to recover the $45,000 payment from Trimm in accordance with the indemnity clause. Alabama law precludes a third party tortfeasor from obtaining indemnity against an employer who has paid worker's compensation benefits under the Alabama statute even when the employer has agreed expressly in a contract to indemnification. *Stauffer Chemical Co. v. McIntyre Electric Service Inc.,* 401 So.2d 745 (Ala.1981); *Hertz Equipment Rental Corp. v. Dravo Corp.,* 360 So.2d 325 (Ala.1978); *Paul Krebs and Associates v. Matthews and Fritts Construction Co.,* 356 So.2d 638 (Ala.1978); *Gunter v. United States Fidelity & Guaranty Co.,* 340 So.2d 749 (Ala.1976).

The district court held that a Georgia court would apply lex loci contractus and that receipt by Trimm in Alabama of its executed copy of the master agreement constituted the last act necessary to establish the site of the contract for conflicts analysis. The district court therefore applied Alabama law and dismissed GTE's action.

■ When faced with a choice of law issue, a federal court sitting in diversity must look for its resolution to the conflicts rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Residential Industrial Loan Co. v. Brown,* 559 F.2d 438, 440 (5th Cir.1977). GTE argues that Georgia applies the lex loci approach to choice of law problems. Proper application of this rule, the appellant argues, requires the court to determine where the last act essential to the contract's completion was performed. GTE asserts that the last act was the acceptance by GTE of the Dalton project contract and mailing of it by GTE. Trimm argues that the determinative location under Georgia's lex loci system is not where the contract is executed, but rather where it is delivered. Alternatively Trimm contends that Georgia now applies the Restatement (Second) of Conflicts approach and that the center of gravity of the contract is in Alabama.

■ Under the lex loci approach, a court looks to the law of the state where the contract was made to ascertain whether the agreement is valid or enforceable. *Beck & Gregg Hardware Co. v. Southern Surety Co.,* 44 Ga.App. 518, 162 S.E. 405 (1931); *Tillman v. Gibson,* 44 Ga.App. 440, 442–43, 161 S.E. 630, 632 (1931). In deciding where a contract was made, the court must determine where the last act essential to the completion of the contract was done. *Robinson v. Ravenel Co.,* 411 F.Supp. 294, 296–97 (N.D.Ga.1976); *Peretzman v. Borochoff,* 58 Ga.App. 838, 842–43, 200 S.E. 331, 334 (1938). GTE and Trimm disagree on whether the place of execution or the place of delivery establishes the place of the "making" of the contract.

■ As a preliminary matter, we must determine whether to examine the circumstances surrounding the master agreement or the job-specific contract. We conclude that, if lex loci governs, the location of the job-specific contract establishes which state's law would apply. This action involves the enforceability of Article XII of the master agreement *as incorporated* into the July 1973 contract covering the Dalton project. The master agreement only authorized Trimm to perform such work as it may obtain; no agreement to perform work to which Article XII would apply existed until GTE accepted Trimm's bid on the Dalton project. We therefore must examine the indemnity clause and other provisions of the master agreement to the extent that they are included in the July 1973 contract.

Trimm argues that the determinative location under Georgia law is not where the contract is executed but rather where it is delivered. We disagree. Both contracts resulted from offers made by letter. O.C.G.A. § 13–3–3 (1982) provides: "If the offer is made by letter, an acceptance by written reply *takes effect from the time it is sent* and not from the time it is received; ..." (emphasis added). Several federal and Georgia decisions broadly imply that

we should look to the place of delivery of the contract. *Residential Industrial Loan Co. v. Brown,* 559 F.2d 438, 440–41 (5th Cir.1977); *Float-Away Door Co. v. Continental Casualty Co.,* 372 F.2d 701 (5th Cir. 1966), *cert. denied,* 389 U.S. 823, 88 S.Ct. 58, 19 L.Ed.2d 76 (1967); *Robinson v. Ravenel Co.,* 411 F.Supp. 294, 296–97 (N.D.Ga.1976); *Pink v. A.A.A. Highway Express, Inc.,* 191 Ga. 502, 13 S.E.2d 337, *aff'd,* 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. 152 (1941); *Iowa State Travelers Mutual Association v. Cadwell,* 113 Ga.App. 128, 147 S.E.2d 461 (1966); *Peretzman v. Borochoff,* 58 Ga.App. 838, 200 S.E. 331 (1938). Upon examination, these cases do not support a general rule that delivery, rather than execution, determines the place of the "making" of the contract. The decisions in *Pink, Cadwell* and *Float-Away* involve interpretation of insurance contracts. The Georgia Supreme Court in *Pink* emphasized that "a contract of insurance is made, not where the policy was executed, but where it was in fact delivered." *Pink,* 191 Ga. at 344, 13 S.E.2d at 513. The last act essential to the making of an insurance contract is the receipt of the policy by the insured which informs her of the need to begin premium payments. Similarly, the decisions in *Peretzman* and *Brown* involved the validity of negotiable instruments. In *Peretzman,* the Georgia Court of Appeals held:

> 'The place where a contract is made depends not upon the place where it is written, signed, or dated, but upon the place where it is delivered as consummating the bargain. Thus, the law of the place where a bill or note is written, signed, or dated does not necessarily control it but the law of the place where it is delivered from drawer or maker to payee, or from indorser to indorsee, or has been said, where the last act essential to its completion was done, so that, where a note was executed in one State but not completed until accepted in another State, it is made in that other State.'

58 Ga.App. at 842, 200 S.E. at 334 (quoting 2 Daniel on Negotiable Instruments (7th ed.), 1110 § 1017).

In the case at bar we are asked to interpret a contract for the construction of an underground piping system. Unlike an insurance agreement or a negotiable instrument, such a contract is "made" when the offer is accepted. The acceptance, not delivery, constitutes the last act essential to the completion of the contract. GTE accepted Trimm's mailed offer to build the Dalton system at its Moultrie, Georgia office. Proper application of lex loci contractus would therefore require the court to look to Georgia law in interpreting the validity of the indemnity provision.

No Georgia court appears to have addressed the question of whether a contractual indemnity provision may be enforced by a third party tortfeasor against an employer who has paid worker's compensation benefits to an injured employee. To resolve the issue and to insure stare decisis effect for our opinion, we certify this case to the Georgia Supreme Court for a resolution of this and other state law questions. O.C. G.A. § 15–2–9 (1982).

In reviewing this case, the Georgia Supreme Court is requested to consider a more basic question regarding Georgia conflicts rules which has arisen in the wake of the Georgia Court of Appeals decision in *Allen v. Smith & Medford, Inc.,* 129 Ga.App. 538, 199 S.E.2d 876 (1973). In that case, the court, seeking to determine whether the securities in question were governed by the Georgia Securities Act, stated on motion for rehearing:

> The general [lex loci] rule with regard to contracts has been repealed. Our courts may still apply the essence of that rule in other situations. See *Goodman v. Nadler,* 113 Ga.App. 493, 495, 148 S.E.2d 480. But there is no law holding that such rule or rules is now applicable to our Georgia Securities Act.

*Id.* at 544, 199 S.E.2d at 881. In *Eldon Industries, Inc. v. Paradies and Co.,* 397 F.Supp. 535 (N.D.Ga.1977), the federal district court stated:

> Although the *Allen* case left open the question of which conflicts rule might govern actions not involving Georgia se-

curities laws, the strong implication in that case is that the Georgia courts will now generally adhere to the 'grouping of contracts [sic]' theories expressed in the Restatement (Second) of Conflicts § 188 (1971).

*Id.* at 538 (citation omitted).[2] Some later federal district court opinions have concluded that Georgia has unequivocally adopted the center of gravity approach. *E.g., Hayes v. Irwin,* 541 F.Supp. 397, 414 (N.D.Ga. 1982); *A.T.O. Inc. v. Stratton & Co.,* 486 F.Supp. 1323, 1326 (N.D.Ga.1980); *Brown v. Inter-Ocean Insurance Co.,* 438 F.Supp. 951 (N.D.Ga.1977). One commentator has suggested that it would be desirable for the Georgia courts to eliminate the resultant confusion, *see e.g., Ryder Truck Rental, Inc. v. St. Paul Fire & Marine Insurance Co.,* 540 F.Supp. 66, 68 (N.D.Ga.1982),[3] resulting from the district court's repeated assertion that Georgia has already adopted the center of gravity approach. Rees, *Choice of Law in Georgia; Time to Consider a Change?* 34 Mercer L.Rev. 787, 808 (1983). As a federal court sitting in diversity bound to apply Georgia law correctly, *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we are not unmindful that this particular Georgia question often arises in federal courts. The very nature of cases involving contracts executed or to be performed in one or more states often involve parties in a position to invoke a federal court's diversity jurisdiction. *E.g., Hayes v. Irwin,* 541 F.Supp. 397 (N.D.Ga.1982). Thus, absent certification, it appears less likely that resolution of the issue will reach the Georgia Supreme Court, the court that is the proper forum for its resolution.

By directive from the Clerk, we now ask counsel to assist us in drafting the question or questions to be certified. We do not intend the statement of the issues to inhibit the Georgia Supreme Court in framing its answer and we solicit answers to all questions considered significant.

On receipt of counsels' proposed statement of the facts and issues to be certified, we will issue the formal certification transmitting the entire record in this case, the Court's opinion, and all the papers and briefs to the Georgia Supreme Court.

CERTIFIED.

**2.** Under the grouping of contacts theory, also referred to as the center of gravity approach, the court would examine five factors in determining which state's law to apply. These factors include the place of contracting, the place of the negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation, and place of business of the parties. Restatement (Second) of Conflicts § 188 (1971).

**3.** "In Georgia, there are two alternative rules which may be applied in this case: *lex loci contractus* or center of gravity." *Id.* (footnote omitted). The court also noted that Georgia courts have not explicitly addressed the question whether the grouping of contacts approach applies to Georgia conflicts cases construing contracts. *Id.* at 68 n. 2.